**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**(Charlottesville Division)**

| | |
|---|---|
| **MANGANARO MIDATLANTIC, LLC,** | |
| *Plaintiff/Counter-Defendant,* | |
| **v.** | **Case No. 3:19-cv-00080-GEC** |
| **KBE BUILDING CORPORATION,** *et al.,* | |
| *Defendant/Counter-Plaintiff* | |

**MEMORANDUM IN SUPPORT OF THE MOTION TO**
**COMPEL PLAINTIFF'S RESPONSES TO REQUESTS FOR ADMISSION**

COMES NOW Defendant KBE Building Corporation ("KBE") by counsel and pursuant to Fed. Rule Civ. P. 36(a)(6) and states as follows for its Memorandum in Support of its Motion to Compel:

## I.  Factual Background

This matter stems from the construction of a residence hall on the campus of the University of Virginia in Charlottesville (the "Project").  KBE is the General Contractor on the Project and retained Plaintiff as a subcontractor to perform rough carpentry, drywall, exterior façade, suspended ceiling and related work on the Project ("Subcontract Agreement").  The total value of the Subcontract Agreement is approximately $3.2 million dollars.

Plaintiff's Complaint in this matter alleges a breach of contract claim (Count I) against KBE involving disputed claims for an alleged base contract balance of approximately $300,000 and over $1.2 Million (more than 35% of its original contract) in alleged extra and additional work on the Project.  Plaintiff's claims consist largely of approximately **300** unsubstantiated and disputed extra work orders.  In support of this claim, Plaintiff produced in excess of **900** pages of

1

Change Order and Extra Work Order documentation ("Extra Work Orders"). However, these Extra Work Orders, while voluminous, lack much of the necessary information to assess Plaintiff's claimed damages and compliance with the Subcontract Agreement. In relevant part, the Subcontract Agreement states:

> To the extent work is performed under this section (Changes and Claims) without advance agreement of the adjustment to the subcontract price, if any, or time, if any, Subcontractor shall track all labor, material and equipment and obtain daily verification by Contractor of these resources utilized solely for the work at issue. **To the extent such work is, in fact, a change to the scope of Subcontractor's Work under this Agreement, Subcontractor's payment shall be limited to the** <u>actual cost incurred</u> **for labor, materials and equipment as substantiated by Subcontractor and verified by Contractor or Owner as the case may be, plus the markup set forth in subparagraph (c) below.**

> Subcontractor shall submit in writing to Contractor all claims for adjustment in the Subcontract price or schedule, including an itemization of the damages and time claimed, within five days after the start of the occurrence giving rise to the claim (unless Contractor allows additional time for the submission of data or the Contract Documents provide for a shorter time). No claim for an adjustment in the contract time or price shall be valid if not submitted in accordance with this Article 9 and shall be barred if not so submitted. Subcontractor waives all claims for additional compensation and an extension of time if Subcontractor fails to strictly comply with any terms of this Section 9, and any costs incurred by Subcontractor shall be at the Subcontractor's sole risk and cost.

> Adjustments in the Subcontract price resulting from changes, shall be set forth in a Subcontract Change Order. **Subcontractor shall receive a mark-up of 15% for combined overhead, insurance premiums, permit fees, bond premiums and profit on the direct costs of materials and labor associated with any change, provided such costs are agreed to by Contractor.**

> **Subcontractor acknowledges that Contractor's superintendent or other field personnel shall not be an authorized agent of Contractor to approve Subcontractor's change requests.** Accordingly, no course of conduct or dealings between the parties, nor express or implied acceptance or alterations or additions to the Work, and no claim that the Owner or Contractor has been unjustly enriched by any alteration or addition to the Work, whether or not there is, in fact, any unjust enrichment to the Work, shall be the basis of any claim for an increase in any amounts due under the Subcontract Documents or for a change in any time period provided for in the Subcontract Documents.

> **In the event that Owner or Contractor request pricing of changes in the Work, Subcontractor agrees to provide pricing and associated detail, such as substantial breakdowns of labor, material and equipment, within a reasonable period of time, not**

*to exceed five days from Subcontractor's receipt of the request. Failure by Subcontractor to timely provide the information required by this section shall permit Contractor, at Contractor's sole and exclusive discretion, to provide its own reasonable estimate, which estimate shall be binding on Subcontractor. (emphasis added).*

In addition to the quality of the work performed by Plaintiff, assessing Plaintiff's actual costs for additional work performed under the Subcontract Agreement, and its compliance with said agreement as it relates to obtaining approval for the additional work is a focal point of this litigation. KBE has repeatedly asked Plaintiff (in discovery and otherwise) for actual cost verification for these extra work claims and who performed the additional work (Plaintiff or another subcontractor) (*See* Exhibit 1). To date, Plaintiff has not provided this information as part of its discovery responses. Unfortunately, the documentation Plaintiff has produced in support of its claim do not answer these necessary questions.

On December 1, 2020, KBE issued Requests for Admission on Plaintiff to address the missing information from the Extra Work Orders (Exhibit 2). KBE attached the Extra Work Orders to the Requests for Admission and requested Plaintiff to admit certain facts about each additional work ticket. KBE attached the Extra Work Orders in the same exact format and order as they were produced by Plaintiff. Due to a scheduled mediation in February 2021 that was recently completed without settlement, the parties agreed to extend the deadline for discovery responses.

On March 5, 2021, Plaintiff responded to the Requests for Admission and objected to every single request (Exhibit 3). Plaintiff asserted a general objection that the requests were oppressive and an "improper weaponization of discovery." Furthermore, for nearly every single

request, Plaintiff denied the request subject to and without waiving the objections.[1] KBE sent Plaintiff a deficiency letter and informally asked Plaintiff to withdraw its objections and supplement its answers (Exhibit 4). Those requests went unanswered. The specific requests at issue are addressed in turn below.

## II. Applicable Law

If a party does not admit the subject of a request, Rule 36 requires the party to "specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." *Fed. R. Civ. P.* 36(a)(4). "General objections are not useful to the court ruling on a discovery motion," and a bare objection does not meet the standard for a successful objection. *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.,* 103 F.R.D. 52, 58 (D.D.C. 1984). Moreover, failure to make "specific legitimate objections" to particular requests may result in a court deeming any objections waived. *Casson Constr. Co. v. Armco Steel Corp.,* 91 F.R.D. 376, 379 (D. Kan. 1980)). Rule 36(a)(6) allows a party who has served a request for admission to move the court "to determine the sufficiency of an answer or objection. Unless the court finds the objection justified, it must order that an answer be served."

When a party objects to discovery on the grounds that it is burdensome and oppressive, it must do more to meet its burden than make conclusory and unsubstantiated allegations. *Covertino v. United States Department of Justice,* 565 F.Supp.2d 10, 14, (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.,* 225 F.R.D. 667, 672

---

[1] KBE also issued Interrogatories and Requests for Production of Documents on Plaintiff seeking this information and Plaintiff repeatedly instructed KBE to refer to its production of documents (Extra Work Orders). KBE filed a separate Motion to Compel those discovery responses.

(D.Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection). However, the extent, scope, and volume of discovery of a particular case is also dependent on the value and complexity of the case. *Id.*

This is a breach of contract claim, but there are a number of complicating factors. First and foremost, Plaintiff's claims are based entirely on these voluminous Extra Work Orders that it now seeks to avoid. In essence, Plaintiff brought this claim, produced the Extra Work Orders and has been reluctant to provide any additional information such as actual costs to complete the work and who actually performed the work. Plaintiff chose to bring this claim and rely on this documentation. It should be not be permitted to avoid adequate explanation simply because doing so will take time and effort.

Plaintiff is seeking approximately $1,500,000 from KBE, which justifies extensive discovery. Other than Plaintiff's general objections, Plaintiff has not submitted any affidavits or other documentation to explain the oppressive nature of these requests. Furthermore, Plaintiff will need to address these facts in order to prevail on its claims.

## III. Analysis

### a. General Objections

As an initial matter, Plaintiff's general objections are not well-taken and should be stricken. Plaintiff asserted a general objection that stated the requests were oppressive and an "improper weaponization of discovery." In essence, Plaintiff argues that it will take a lot of time and effort to fully respond to these requests. This is not entirely untrue, but more importantly, Plaintiff fails to address why it is not necessary or justified. Again, the focus of these requests are the documents Plaintiff produced. These documents are the only documents Plaintiff

produced in support of its claims and the requested information is necessary to assess the validity of Plaintiff's claim.

Plaintiff makes absolutely no attempt to explain why the requested information is unnecessary or not proportional to the needs of the case. Rather, Plaintiff makes a conclusory general objection and calls it a day. This is improper and Plaintiff's general objection should be stricken.

### b. Requests for Admission

KBE's requests for Admission are reasonably intended to reduce the number of issues at trial with respect to the hundreds of extra work tickets on which Manganaro bases its claims in this litigation. KBE's Request for Admission Number 1, asks Plaintiff to admit who performed the work for each extra work order. Plaintiff asserted a general objection and then responded with a single denial. Plaintiff should possess this information and it is relevant to this claim. Further, Plaintiff could identify in groups the extra work orders that other vendors fulfilled and the ones that Plaintiff single-handedly fulfilled. This information is necessary because it is contested whether Plaintiff personally performed this extra work. Therefore, Plaintiff's general objective that this request is oppressive is not well-founded and the response is insufficient.

KBE's Request for Admission Number 2, asks Plaintiff do admit whether the costs represented on each extra word order were actually incurred or paid by Plaintiff. Plaintiff asserted a general objection and then responded with a single denial. Again, Plaintiff could simply identify by grouping its own work orders that actually show the costs Plaintiff incurred or paid. This information is necessary because it relates to Plaintiff's actual costs to perform this extra work. Therefore, Plaintiff's general objection that this request is oppressive is not well-founded and the response is insufficient.

KBE's Requests for Admission 4, 6, 7, 8-12, ask Plaintiff to admit facts that are directly relevant to Plaintiff's compliance with the Subcontract Agreement. RFA No. 4 asks Plaintiff to admit it did not submit the required subcontractor change order estimate (SS-1 form) for the respective change orders (See Rider "C" to the Subcontract Agreement). RFA No. 5 asks Plaintiff to admit it did not submit its actual costs incurred as it relates to the change orders (See Section 9(a) of the Subcontract Agreement). RFA No. 7 requests Plaintiff to admit Plaintiff did not provide the surety with backup documentation that shows its actual costs incurred as it relates to the change orders. (See 9(a) of the Subcontract Agreement). RFA No. 8 requested Plaintiff to admit it did not provide KBE with an itemization of the damages and the time claimed by Plaintiff for each change order within five days after the start of the occurrence giving rise to the claim. (See Section 9(b) of the Subcontract Agreement). RFA No. 9 requested Plaintiff to admit that it did not request additional time from KBE to submit its itemization of damages and time claimed for each change order. (See Section 9(b) of the Subcontract Agreement). RFA No. 10 requested Plaintiff to admit that KBE did not grant Plaintiff additional time to submit its itemizations and time claimed pursuant to Section 9(c) of the Subcontract Agreement. Likewise, RFAs 11-12 request Plaintiff to admit it did not seek any extension of time to submit its itemization of costs for change orders pursuant to Section 9 of the Subcontract Agreement.

For each of these requests, Plaintiff asserted its general objection and then issued a flat denial without specifying the particular change orders. Again, the fact that it might require Plaintiff to address each of the Extra Work Orders is not persuasive. Plaintiff brought this breach of contract claim and these voluminous records are the only documents that support its claim. Unfortunately, navigating these voluminous records is the only way to assess whether

7

Plaintiff's claims have any merit. Permitting Plaintiff to avoid explaining its own documentation because it is too burdensome is illogical and prejudicial. Therefore, Plaintiff's objections to these requests should be stricken and Plaintiff should be ordered to fully respond to the requests.

KBE's Request for Admission 15 asks Plaintiff to admit that it never signed and returned a specific change order before it was rescinded. This is a specific request relating to an isolated change order. This information should be readily accessible. Plaintiff asserted that this request is oppressive and then failed to adequately respond to the request. Accordingly, KBE requests that Plaintiff's objection be stricken and the request deemed admitted.

KBE's Requests for Admission Number 26 and 27 asks Plaintiff to admit KBE offered Plaintiff an opportunity to inspect the corrective work needed under its scope of work and that Plaintiff declined that request. Plaintiff asserted its general objection and then stated that the requests were irrelevant, without answering the requests at all. These requests are not oppressive or burdensome. These are simple factual matters that can be easily be confirmed. Answering this request does not require extensive effort or burden. Further, it is relevant because it relates to Plaintiff's scope of work under the original contract and work that was performed incorrectly. Therefore, Plaintiff's objections should be stricken and these requests deemed admitted.

KBE's Request for Admission Number 30 asks Plaintiff to admit it is obligated to submit, true, accurate and supported applications for payment, Tickets, PCOs and claims. Plaintiff asserted its general objection and stated that the phrase "true, accurate, and supported" is ambiguous. Again, the general objection is without merit. It is not burdensome for Plaintiff to ascertain whether it is required to submit accurate applications for payment as it relates to this project. Further, the phrase "true, accurate, and supported" is not ambiguous. These are common words that are simply asking whether Plaintiff was required to submit accurate

information. If Plaintiff was unclear about the meaning of these words, it could have issued a conditional response or admitted the request based on an assumption of the meaning of the phrase.  Plaintiff did neither.  The general objection should be stricken and the request deemed admitted.

## IV.      Conclusion

As discussed above, these objections are inappropriate and the responses are not sufficient.  Unfortunately, Plaintiff's claim is based on voluminous records.  However, that is not an excuse for Plaintiff to avoid discovery on the same.  Asserting a general objection based on the inquiry into these voluminous records is borderline contradictory.  These general objections should be stricken and Plaintiff should be required to fully respond to the requests.

Respectfully Submitted,
KIERNAN TREBACH LLP

By:      /s/
R. Michael Trumble, Esq. (VSB #91133)
1233 20th Street, NW, 8th Floor
Washington, DC 20036
(202) 712-7000 *telephone*
(202) 712-7100 *facsimile*
mtrumble@kiernantrebach.com
*Counsel for KBE Building Corporation and Federal Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of March, 2022, a true and correct copy of the

foregoing document was served via email and First Class mail, postage prepaid, upon the

following:

    Christopher A. Taggi
    ASMAR, SCHOR & MCKENNA, PLLC
    5335 Wisconsin Avenue, NW, Suite 400
    Washington, DC 20015
    ctaggi@asm-law.com
    *Counsel for Manganaro Midatlantic, LLC*

                    R. Michael Trumble

## langanaro v. KBE

Chris:


Thanks for the call today. Just to maintain some record of our conversation, you're going to take a look at Plaintiff's RFA Answers and potentially supplement and/or expand upon your issues with the structure/organization of the requests.  Also, you're going to speak to your client about providing you with the documentation that is responsive to our requests for production of documents and that we asked for in advance of the mediation.  Finally, please let me know when your 30(b)(6) representative is available so we can get that deposition scheduled.

As we discussed, we really need substantive movement on these issues by April 15, 2021.  If I misstated anything, please let me know.

Thanks,


Mike
[Quoted text hidden]

**EXHIBIT**

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | | |
|---|---|---|
| **MANGANARO MIDATLANTIC, LLC,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:19-CV-00080** |
| | ) | |
| **KBE BUILDING CORPORATION,** *et al.*, | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

## KBE BUILDING CORPORATION'S FIRST SET OF REQUESTS FOR ADMISSION TO MANGANARO MIDATLANTIC, LLC

Defendant, KBE Building Corporation ("Defendant" or "KBE"), through undersigned counsel and pursuant to Fed. R. Civ. P. 36, hereby requests that Plaintiff, Manganaro Midatlantic, LLC ("Plaintiff" or "Manganaro") respond to these requests for admission. In answering these requests, you shall be guided by the following instructions and definitions:

## INSTRUCTIONS

1.      The answer to any of these requests must specifically deny it or state in detail why you cannot truthfully admit or deny it.

2.      A denial must fairly respond to the substance of the matter; and when good faith requires that you qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

3.      If you assert lack of knowledge or information as a reason for failing to admit or deny you must state whether you have made reasonable inquiry and that the information you know or can readily obtain is insufficient to enable you to admit or deny.



EXHIBIT
2

4.    If Manganaro objects to any request, the specific grounds for objecting to a request must be stated with specificity and detail.

5.    These requests are continuing in nature. If you receive or become aware of information in addition to, or in any way inconsistent with your initial responses to these requests at any time before trial in this matter, you are required to supplement your answers promptly.

## DEFINITIONS

A.    "And" shall include "or" and vice versa; the singular shall include the plural and vice versa; "any" includes the word "all" and "all" includes the word "any"; "each" includes the word "every" and "every" includes the word "each."

B.    "Communication(s)" means, without limitation of its generality, letters, notes, electronic mail, memoranda, telefaxes, statements, discussions, meetings, face to face conversations, telephone conversations, speeches, remarks, questions, answers, panel discussions, symposiums, or any other kind of transmittal of information, whether written or oral.

C.    "You" or "your" shall include the party to whom these requests are addressed, its owners, agents, affiliates, officers, directors, predecessors, and persons acting on its behalf, including, but not limited to, its counsel.

D.    "Plaintiff" or "Manganaro" means Manganaro Midatlantic, LLC, party to this action, and all of its joint and several agents, employees, representatives and attorneys.

E.    "KBE" means KBE Building Corporations, party to this action, and all of its joint and several agents, employees, representatives and attorneys.

F.    "Federal" mean Federal Insurance Company, party to this action, and all of its joint and several agents, employees, representative and attorneys.

G.     "Owner" means The Commonwealth of Virginia and The Rector and Visitors of the University of Virginia, and all of its joint and several agents, employees, representatives and attorneys.

H.     "Complaint" refers to the complaint filed by Manganaro against KBE and Federal in the above-captioned lawsuit.

I.     "Concerning" includes referring to, relating or pertaining to in any way, embodying, regarding, connected with, commenting on, responding to, showing, describing, analyzing, reflecting or constituting.

J.     "Project" means the University of Brandon Avenue Upper-Class Housing Project, Project Code 207-B1266-000, located at 600 Branson Avenue, Charlottesville, VA 22904, that is the subject of this action.

K.     "Prime Contract" means the contract between KBE and the Owner for the Project, along with all amendments or modifications thereto.

L.     "Subcontract" means the Subcontract agreement dated on or about May 15, 2018 between KBE and Manganaro and relating to the Project.

M.     "Bond" means Payment Bond number 82461347 issued by Federal in regard to the Project and identifying KBE as the principal.

N.     "Document" or "documents" is used in the broadest sense of the term and includes, but is not limited to, the original and any non-identical copy, regardless of origin or location, of any letter, correspondence, communication, electronic mail, text message, SMS message memorandum, contract, draft contract, agreement, telegram, report, notebook journal, work sheet, ledger sheet, statement, confirmation slip, check, check stub, invoice, record, inventory, settlement check, pleadings (either in draft or final form), court filing, study,

governmental report, plan, summary, handwritten note, diary, working paper, manual, brochure, pamphlet, advertisement, circular, schedule, agenda, minutes, drawing, map, appraisal, analysis, statistics, financial statements, forecast, projection, estimate, bulletin, notice, announcement, instruction, press release, written conference, interoffice and intraoffice communications, opinions or reports of consultants, charts, paper, graph, index, tape, disc, electronic recording, data sheet or data processing card, computer programs, data contained in computers, or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced, to which you have or had access. "Document" or "documents" shall further collectively include the original, duplicate original, and any or all copies or reproductions of the original document to the extent that any or all copies are different in any way from the original document, whether by interlineation, receipt stamps, notation, indication of copies sent or received, or otherwise.

O.     "Include" or "including" means including, but not limited to.

P.     "Person" or "Persons" shall be deemed to mean and refer to any and all entities whatsoever, including, without limitation, natural persons, associations, firms, companies, corporations, partnerships, joint ventures, subsidiaries, trusts, estates, departments, divisions, affiliates, groups, bureaus, public agencies or boards, as well as any and all predecessors and/or successors-in-interest to, other business enterprises or legal entities, and members or stockholders of any of the foregoing.

Q.     "Relating" or "referring" or which "relates" or "refers" to any given subject means any communication that constitutes, defines, contains, embodies, reflects, identifies, states, refers to, deals with, or in any way pertains to that subject, including, without limitation, documents concerning the preparation of other documents.

R.     "UVA" and "Owner", means the University of Virginia and the Board of Regents of the University of Virginia and all subsidiaries and affiliates thereof that may constitute the Owner of the subject Project.

S.     "Vendor" shall mean an independent contractor (whether an individual person or legal entity), subcontractor, separate business entity, Manganaro-affiliated entity, labor broker, supplier of labor, materials and/or equipment, a Person to whom an IRS Form 1099 was or should have been issued, or any other Person performing or providing any part of the Work under the Subcontract for or through Manganaro, regardless of tier or contractual privity with Manganaro, that is separate and apart from Manganaro itself.

T.     "You" or "your" shall include the party to whom these requests are addressed, its owners, agents, affiliates, officers, directors, predecessors, and persons acting on its behalf, including, but not limited to, its counsel.

U.     A "PCO" shall be  or refer or be denied as a Pending Open Chang Order as set forth in, and identified by, Exhibits 3 to the Complaint in this action.

V.     A "Ticket" or "Tickets" shall refer and relate to, or be defined as, each Daily Extra Work Order tickets attached hereto as **Exhibit A**.

### REQUESTS FOR ADMISSION

**REQUEST NO. 1:**  With respect to each PCO, and the corresponding Manganaro Tickets, admit separately and individually for each Ticket that one or more persons that performed work on the Ticket was or worked for a Vendor.

**RESPONSE:**

**REQUEST NO. 2:** With respect to each of the PCOs and Tickets, admit separately for each Ticket or PCO that at least some portion of the alleged direct costs for work represented on each such Ticket or PCO were not actually incurred or paid by Manganaro.

**RESPONSE:**


**REQUEST NO. 3:** With respect to each PCO or Tickets, admit separately and itemize for each Ticket or PCO that at least some of the alleged labor or supervision time represented on the Ticket or PCO is inaccurately high.

**RESPONSE:**


**REQUEST NO. 4:** With respect to each PCO and Ticket, admit separately and itemize for each PCO and Ticket that Manganaro did not submit to KBE an SS-1 Form for work performed by a Vendor.

**RESPONSE:**


**REQUEST NO. 5:** With respect to each PCO and Ticket, admit separately for each PCO and Ticket that the Manganaro stated or identified supervisor or foreman was, or should have been, already on site for Manganaro's base contract work.

**RESPONSE:**


**REQUEST NO. 6:** With respect to each PCO and Ticket, admit separately for each PCO and Ticket that the Manganaro did not provide KBE with backup documentation substantiating

Manganaro's actual costs incurred for labor and materials associated with each such PCO and Ticket.

**RESPONSE:**


**REQUEST NO. 7:**  With respect to each PCO and Ticket, admit separately for each PCO and Ticket that Manganaro did not provide the Surety with backup documentation substantiating Manganaro's actual costs incurred for labor and materials.

**RESPONSE:**


**REQUEST NO. 8:**  With respect to each PCO and Ticket, admit separately for each PCO and Ticket that Manganaro did not provide KBE with an itemization of the damages and the time claimed by Manganaro within five days after the start of the occurrence giving rise to the claim.

**RESPONSE:**


**REQUEST NO. 9:**  With respect to each PCO and Ticket, admit separately for each PCO and Ticket that Manganaro did not request or seek additional time to submit to KBE its itemization of damages and time claimed.

**RESPONSE:**


**REQUEST NO. 10:**  With respect to each PCO and Ticket, admit separately for each PCO and Ticket that KBE did not inform or otherwise grant Manganaro additional time allowed for submitting its itemization of damages and time claimed beyond the five days in Section 9(c) of the Subcontract.

**RESPONSE:**


**REQUEST NO. 11:** Admit that Manganaro did not submit a written request to KBE for an extension of the Contract Time under the Subcontract for each of the PCOs and Tickets or for any other claims or changes it seeks recovery for in this case.

**RESPONSE:**


**REQUEST NO. 12:** Admit that Manganaro did not submit a written request to KBE for an extension of the Contract Time under the Subcontract within five days after the start of the occurrence giving rise to any of Manganaro's claims, as defined under the subject subcontract.

**RESPONSE:**


**REQUEST NO. 13:** Admit that stenciling was part of Manganaro's scope of work under the Subcontract.

**RESPONSE:**


**REQUEST NO. 14:** Admit that Manganaro did not perform the punch list and other corrective work requested by KBE and UVA after September 2019 (other than repairing the ceilings in the mail room and laundry rooms where ceiling grid hangers pulled loose).

**RESPONSE:**


**REQUEST NO. 15:** Admit that Manganaro never signed and returned Change Order No. 16 before it was rescinded by KBE.

**RESPONSE:**


**REQUEST NO. 16:** With respect to Change Order No. 16 that was rescinded by KBE, attached hereto as **Exhibit B**, and the corresponding Manganaro Tickets, admit separately for each Ticket that one or more persons that performed work on the Ticket was or worked for a Vendor.

**RESPONSE:**


**REQUEST NO. 17:** With respect to Change Order No. 16 that was rescinded by KBE, attached hereto as **Exhibit B**, and the corresponding Manganaro Tickets, admit separately for each Ticket that at least some of the alleged costs for work represented on the relevant Ticket were not actually incurred or paid by Manganaro.

**RESPONSE:**


**REQUEST NO. 18:** With respect to Change Order No. 16, that was rescinded by KBE, attached hereto as **Exhibit B**, and the corresponding Manganaro Tickets, admit separately for each Ticket that at least some of the alleged labor or supervision time represented on the Ticket is inaccurately high.

**RESPONSE:**


**REQUEST NO. 19:** With respect to Change Order No. 16 that was rescinded by KBE, attached hereto as **Exhibit B**, and the corresponding Manganaro Tickets, admit separately for each Ticket that Manganaro did not submit to KBE an SS-1 Form for work performed by a Vendor.

**RESPONSE:**

**REQUEST NO. 20:** With respect to Change Order No. 16 that was rescinded by KBE, attached hereto as **Exhibit B**, and the corresponding Manganaro Tickets, admit separately for each Ticket that the stated or identified Manganaro or vendor supervisor or foreman was, or should have been already, on site for Manganaro's base contract work.

**RESPONSE:**


**REQUEST NO. 21:** With respect to Change Order No. 16, that was rescinded by KBE, attached hereto as **Exhibit B**, and the corresponding Manganaro Tickets, admit separately for each Ticket that the Manganaro did not provide KBE with backup documentation substantiating, supporting and documenting Manganaro's actual costs incurred for labor and materials.

**RESPONSE:**


**REQUEST NO. 22:** With respect to Change Order No. 16 that was rescinded by KBE, attached hereto as **Exhibit B**, and the corresponding Tickets, admit separately for each Ticket that Manganaro did not provide the Surety with backup documentation substantiating Manganaro's actual costs incurred for labor and materials.

**RESPONSE:**


**REQUEST NO. 23:** With respect to Change Order No. 16 that was rescinded by KBE, attached hereto as **Exhibit B**, and the corresponding Manganaro Tickets, admit separately for each Ticket that Manganaro did not provide KBE with an itemization of the damages and time as claimed by Manganaro within five days after the start of the occurrence giving rise to the claim.

**RESPONSE:**

**REQUEST NO. 24:** With respect to Change Order No. 16 that was rescinded by KBE, attached hereto as **Exhibit B**, and the corresponding Manganaro Tickets, admit separately for each Ticket that Manganaro did not request additional time to submit to KBE its itemization of damages and time claimed.

**RESPONSE:**


**REQUEST NO. 25:** With respect to Change Order No. 16 that was rescinded by KBE, attached hereto as **Exhibit B**, and the corresponding Manganaro Tickets, admit separately for each Ticket that KBE did not inform Manganaro of additional time allowed for submitting its itemization of damages and time claimed beyond the five days in Section 9(c) of the Subcontract.

**RESPONSE:**

**REQUEST NO. 26:** Admit that KBE offered Manganaro an opportunity to visit the Project on or about March 11, 2020 and that KBE also offered Manganaro the opportunity to review first-hand with KBE all open Manganaro punch list and corrective items (the "Site Visit Offer").

**RESPONSE:**


**REQUEST NO. 27:** Admit that Manganaro declined to attend the Site Visit Offer referenced in Request for Admission No. 26.

**RESPONSE:**


**REQUEST NO. 28:** Admit that Manganaro did not self-perform any work on this Project.

**RESPONSE:**

**REQUEST NO. 29:** Admit that Manganaro subcontracted or otherwise had lower-tier subcontractors or vendors perform all of Manganaro's Work on the Project.

**RESPONSE:**


**REQUEST NO. 30:** Admit that Manganaro is obligated to submit, true, accurate and supported applications for payment, Tickets, PCOs and claims.

**RESPONSE:**


**REQUEST NO. 31:** Admit that Manganaro did not fully and properly perform its Work and identify what Work it did not perform.

**RESPONSE:**


**REQUEST NO. 32:** Admit that Manganaro did not provide back-up for its PCOs and Tickets.

**RESPONSE:**


**REQUEST NO. 33:** Admit that Manganaro did not adequately protect its Work in place.

**RESPONSE:**

Respectfully Submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

Dated: December 1, 2020        By:  /s/ Benjamin L. Williams
                                    Benjamin L. Williams
                                    607 14th Street, NW, Suite 900
                                    Washington, DC 20005
                                    (202) 481-9945 *telephone*
                                    blwilliams@kilpatricktownsend.com

                                    *Counsel for KBE Building Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2020, a copy of the foregoing document has been served via email on the following:

> Christopher A. Taggi, Esq.
> ASMAR SCHOR & McKENNA PLLC
> 5335 Wisconsin Avenue, NW, 4th Floor
> Washington, DC 20015
> ctaggi@asm-law.com
>
> *Counsel for Manganaro Midatlantic, LLC*
>
> and
>
> William R. Mauck, Jr., Esq.
> Patricia J. Bugg Turner, Esq.
> SPOTTS FAIN PC
> 411 East Franklin Street, Suite 600
> P.O. Box 1555
> Richmond, VA 23218
> bmauck@spottsfain.com
> pturner@spottsfain.com
>
> *Counsel for Atlantic Constructors, Inc.*
>
> and
>
> Matthew Johnson
> BONNER KIERNAN TREBACH & CROCIATA, LLP
> 1233 20th Street, NW, 8th Floor
> Washington, DC 20036
> mjohnson@bonnerkiernan.com
>
> *Counsel for Federal Insurance Company*

> /s/ Benjamin L. Williams
> Benjamin L. Williams

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

MANGANARO MIDATLANTIC, LLC

Plaintiff

v.                                                          Case No. 3:19-cv-00080-GEC

KBE BUILDING CORPORATION
and FEDERAL INSURANCE COMPANY

Defendants.

## MANGANARO'S RESPONSE TO KBE'S REQUESTS FOR ADMISSION

Manganaro Midatlantic, LLC responds to KBE Building Corporation's requests for

admission as follows:

### In General

1.      The word usage and sentence structure may be that of the attorney assisting in the

preparation of these responses and does not necessarily purport to be the precise language of the

responding party.

2.      The information supplied in these responses is not based solely on the knowledge

of the responding party, but includes the knowledge of the party's agents, representatives and

attorneys, unless privileged.

3.      These responses, as well as the information supplied, produced or identified

herein, are based upon information currently available, unless privileged, and the responding

party reserves the right to file supplemental responses and/or documents should additional or

different information become available through discovery or otherwise.

4.      The information contained these responses is being provided in accordance with

the provisions of Rule 26 which requires the disclosure of facts which may be relevant and



**EXHIBIT**

3

proportional to the needs of the case, regardless of whether that information is admissible at trial. Accordingly, by providing the information requested, the responding party does not waive any objections to the admissibility of any evidence on the grounds of materiality, relevancy, or any other proper grounds for objection. For any item or document where a privilege is asserted, the responding party reserves the right to assert any other applicable privilege, via supplement or otherwise, as the facts or the evidence so support.

5.      To the extent that production of deleted or un-deleted electronic documents is sought (including, but not limited to, computer files or data, electronic mail, or other information stored on computer-readable disks or other electronic media), and to the extent that production of such materials involves additional costs (whether relating to search, retrieval, attorneys' fees or otherwise), the responding party reserves the right to interpose additional objections or to apply to the court for an order limiting the scope of such production, requiring that some or all of the associated costs be paid by the requesting party, and/or granting any other appropriate relief.

6.      The responding party will produce documents in its possession, custody, or control; however, the responding party will not produce documents that it received in discovery from other parties in the course of this litigation.

### General Objection

Manganaro objects to KBE's requests in their entirety. Most of the requests ask to admit certain facts "separately for each PCO and Ticket" attached at Exhibit A. Exhibit A is a document comprised of 941 pages and containing quite literally hundreds of individual work tickets, extra work orders and proposed changes; Exhibit A lacks bates numbers, pagination or any attempt to separate or organize the documents in a coherent, logical fashion. Multiplying the number of requests by the number of documents in Exhibit A, it is clear that KBE is asking

Manganaro to respond to (easily) thousands or (quite possibly) tens of thousands of "separate" requests. This is the very definition of oppressive discovery. Moreover, because each request asks for Manganaro to deny the very claims it has asserted during the Project and during the litigation, KBE cannot have reasonably believed that Manganaro would have admitted the requests. Thus, KBE's requests represent an improper weaponization of discovery, and not a legitimate method of streamlining the presentation of undisputed evidence at trial.

## Responses to Requests for Admission

1.    Manganaro adopts and restates its general objection. Without waiving this objection, denied.

2.    Manganaro adopts and restates its general objection. Without waiving this objection, denied.

3.    Manganaro adopts and restates its general objection. Without waiving this objection, denied.

4.    Manganaro adopts and restates its general objection. Without waiving this objection, denied.

5.    Manganaro adopts and restates its general objection. Without waiving this objection, denied.

6.    Manganaro adopts and restates its general objection. Without waiving this objection, denied.

7.      Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

8.      Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

9.      Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

10.      Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

11.      Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

12.      Manganaro adopts and restates its general objection.  Furthermore, the request is irrelevant and does not pertain to a claim Manganaro is making in this litigation.  Without waiving this objection, denied.

13.      Manganaro adopts and restates its general objection.  Furthermore, the request is vague and ambiguous as to the term "stenciling."  Without waiving this objection, denied.

14.      Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

15.     Manganaro adopts and restates its general objection. Without waiving this objection, admitted only that Change Order 16 as KBE presented it asked Manganaro to admit to an inaccurate and incorrect accounting of the Subcontract Amount.

16.     Manganaro adopts and restates its general objection. Furthermore, the request refers to unspecified "tickets" which are not attached. Without waiving this objection, denied.

17.     Manganaro adopts and restates its general objection. Furthermore, the request refers to unspecified "tickets" which are not attached. Without waiving this objection, denied.

18.     Manganaro adopts and restates its general objection. Furthermore, the request refers to unspecified "tickets" which are not attached. Without waiving this objection, denied.

19.     Manganaro adopts and restates its general objection. Furthermore, the request refers to unspecified "tickets" which are not attached. Without waiving this objection, denied.

20.     Manganaro adopts and restates its general objection. Furthermore, the request refers to unspecified "tickets" which are not attached. Without waiving this objection, denied.

21.     Manganaro adopts and restates its general objection. Furthermore, the request refers to unspecified "tickets" which are not attached. Without waiving this objection, denied.

22.     Manganaro adopts and restates its general objection. Furthermore, the request refers to unspecified "tickets" which are not attached. Without waiving this objection, denied.

23.     Manganaro adopts and restates its general objection.  Furthermore, the request refers to unspecified "tickets" which are not attached.  Without waiving this objection, denied.

24.     Manganaro adopts and restates its general objection.  Furthermore, the request refers to unspecified "tickets" which are not attached.  Without waiving this objection, denied.

25.     Manganaro adopts and restates its general objection.  Furthermore, the request refers to unspecified "tickets" which are not attached.  Without waiving this objection, denied.

26.     Manganaro adopts and restates its general objection.  Furthermore, whether or not KBE offered Manganaro the opportunity to visit the project site after the filing of the Complaint and during the course of this litigation is irrelevant to the matters in dispute.

27.     Manganaro adopts and restates its general objection.  Furthermore, whether or not KBE offered Manganaro the opportunity to visit the project site after the filing of the Complaint and during the course of this litigation is irrelevant to the matters in dispute.

28.     Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

29.     Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

30.    Manganaro adopts and restates its general objection.  Furthermore, the phrase "true, accurate and supported" is ambiguous.

31.    Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

32.    Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

33.    Manganaro adopts and restates its general objection.  Without waiving this objection, denied.

Dated: 3/5/2021

Respectfully submitted,

Christopher A. Taggi (VA Bar 41953)
Asmar, Schor & McKenna, PLLC
5335 Wisconsin Ave., NW Suite 400
Washington, DC 20015
T: 202-244-4264
F: 202-686-3567
ctaggi@asm-law.com

*Counsel for Manganaro Midatlantic, LLC*

## Certificate of Discovery

I certify that on March _5_, 2021, I will serve copies of the foregoing discovery responses to counsel for the parties via e-mail and that I will retain a copy of the original document until the conclusion of this matter.

Respectfully submitted,

Christopher A. Taggi (VA Bar 41953)
Asmar, Schor & McKenna, PLLC
5335 Wisconsin Ave., NW Suite 400
Washington, DC 20015
T: 202-244-4264
F: 202-686-3567
ctaggi@asm-law.com

*Counsel for Manganaro Midatlantic, LLC*

# KIERNAN

# TREBACH

Kiernan Trebach LLP
1233 20th Street, NW
8th Floor
Washington, DC 20036
T: (202) 712-7000
F: (202) 712-7100
KiernanTrebach.com

**VIA EMAIL**
Chris Taggi, Esq.
Asmar, Schor & McKenna PLLC
5335 Wisconsin Avenue, NW, Suite 400
Washington, DC 20015

Re: *Manganaro v. KBE Building*
Case No.: 3:19-cv-00080-GEC

Chris:

I have reviewed the responses and objections filed in response to KBE's Rule 36 Requests for Admissions to Manganaro dated December 1, 2020. This letter sets forth KBE's position regarding the insufficiency of those answers and the invalidity of the objections. I am also requesting to "meet and confer" to work out the objections prior to seeking court intervention as required by Rule 37(a)(1). KBE also contends that the objections are so deficient and unsustainable that they constitute purposeful evasion by Manganaro of the obligation to admit, and thus the Court should deem them admitted. If they are not admitted, but should have been admitted (which we think is the case), KBE will pursue its costs to establish the corresponding factual contention.

Recall that Manganaro is seeking approximately $1.2M in extra work claims that are based on over 300 extra work tickets and a rejected change order no. 16 for overtime. Recall too that Manganaro provided no backup to support those extra work tickets other than the tickets and corresponding pricing sheets (and some photos in a few cases). To date, notwithstanding prior requests during and after the project for backup documentation to substantiate Manganaro's actual costs as required by the subcontract, no information was provided. Each extra work ticket is in essence a separate claim for which Manganaro has the contractual and legal obligation to substantiate, and the burden of proof at trial. KBE has unique and independent defenses with respect to each extra work ticket and change order request from Manganaro that will be presented at trial. Those defenses are based on, among other things, information provided (or not provided) by Manganaro. KBE's Requests for Admission were specifically prepared to challenge each ticket and each individual claim of Manganaro, especially whether the information and representations made in each extra work ticket are accurate relative to Manganaro's actual costs and whether Manganaro or its sub-subcontractor(s) performed the alleged work. These are all fundamentally critical and relevant points of inquiry regarding Manganaro's claims for which Requests to Admit are entirely proper and appropriate. The burden for Manganaro to respond to KBE's Requests for Admission is no greater than it will be

**EXHIBIT**

4

for Manganaro to respond to KBE's other discovery requests, overcome Manganaro's burden of proof at trial, and overcome KBE's defenses and counterclaims at trial.

KBE's clear and stated position is that Manganaro's claims are unsubstantiated, misrepresented and not compliant with the terms of the subcontract. KBE's Requests for Admission address those issues. In objecting to every Request, Manganaro relies on its broad and sweeping General Objection claiming that the number of Admissions are too voluminous and thus "oppressive." The General Objection seeks clarification regarding referenced Tickets because the exhibits are not bates numbered, paginated or "organized in a coherent, logical fashion." You also claim that the Admissions are improper because they request Manganaro to deny the very claims it asserts, and that KBE "cannot have reasonably believed that Manganaro would have admitted the requests."

For each Ticket, Manganaro improperly objected to KBE's request to admit that:

  a) At least some of the alleged work was performed by a sub-subcontractor, not Manganaro;
  b) Some of the represented costs were not actually incurred or paid by Manganaro;
  c) Some of the represented labor or supervision time was inaccurately high;
  d) Manganaro did not provide KBE with an SS-1 form for work performed by a sub-subcontractor;
  e) The stated supervisor was or should have been already on site for Manganaro;
  f) Manganaro did not provide KBE or the Surety with actual cost backup documentation;
  g) Manganaro did not provide KBE with the damages itemization within the time required by the subcontract;
  h) Manganaro did not request additional time to submit its damages itemization; and
  i) KBE did not inform Manganaro of additional time to submit its damages itemization.

Other Requests were improperly objected to on the same grounds where KBE asked Manganaro to admit that:

  a) Manganaro did not make a written request for addition time;
  b) Stenciling (word used in Manganaro's extra work tickets) was part of Manganaro's contract obligations;
  c) Manganaro did not perform punch list work;
  d) Manganaro rejected the opportunity for, and did not attend, an on-site walk-through with KBE to review the deficiencies with Manganaro's work.

Manganaro's objections are clearly designed to avoid providing proper responses to the Admissions in their entirety. You have not provided any legal substantiation for Manganaro's objections. Taking each of your position points separately:

  1. There is no limit to the number of Requests for Admission that can be issued – certainly not ones that are narrowly tailored to specific and fundamental factual issues in the case. It is Manganaro, not KBE, that is pursuing over 300 extra work tickets. Manganaro should expect a process by which each of those tickets is independently vetted as part of

KIERNAN TREBACH

the litigation process. The number of admissions are directly proportional to the number of claims being made by Manganaro, and there is nothing oppressive about it.

2. The documents referenced in the Requests for Admission are reasonably organized as set forth in Exhibits A and B of the Requests. They are in the same form as presented to KBE by Manganaro. For example, every extra work ticket and corresponding pricing sheet for which Manganaro is making a claim has a unique ticket number assigned by Manganaro. They are in the same order as Manganaro presented them in the Complaint. There is no legitimate ambiguity. However, if your client truly has legitimate difficulty understanding the documents to which the Admissions are directed, please let me know in writing and we will provide further clarification so any reasonable objections can be withdrawn. It is notable that your client made no attempt to seek clarification prior to issuance of the objections.

3. Contrary to your statement, a defendant may use Requests for Admission to test the allegations of a plaintiff's complaint or claims, as KBE has done. This is set forth in the Rule itself, where "A party must not object solely on the ground that the request presents a genuine issue for trial." Rule 36(a)(5). It is also not a basis for objection that the requesting party should not reasonably expect the responding party to admit the request. In answering, Manganaro has the obligation to make reasonable inquiry and secure such knowledge and information as is readily obtainable to it. All of the information to properly respond to the requests is within the exclusive control and knowledge of Manganaro. Manganaro's proper response will facilitate preparation for trial and ease the trial process. If answered truthfully, the responses will allow disposition of some or all of Manganaro's claims by way of summary judgment.

Regarding your objection to Request No. 12 that the issue is irrelevant, the fact that Manganaro never requested a time extension is material and relevant to its claims that KBE failed to properly coordinate the work, the management by Manganaro of manpower resources, the quality issues with Manganaro's work, and the sequencing of the work.

Regarding your objection to Request No. 13 that the term "stenciling" is vague and ambiguous, for clarification that term and variations of it are used by Manganaro in many of Manganaro's extra work tickets at issue in this case (e.g., 2500498-32 (MMA Log 27); 2500498-154 (MMA Log 63); 2500498-114 and 133 (MMA Log 46); 2500498-202 (MMA Log 72)) and it is the tickets referencing stencil work to which the term is referenced). You may cite those references and this clarification in your response.

Regarding your objection to Request Nos. 17 – 25, there are specific extra work tickets attached as part of Exhibit B to the Requests. You may cite those tickets and this clarification in your response.

Regarding your objection to Request Nos. 26 - 27, the issue of Manganaro having been offered and rejected opportunities to review first-hand and understand the claims of defective work being asserted by KBE and UVA is relevant to KBE's claims that Manganaro breached the Subcontract.

KIERNAN TREBACH

Regarding your objection to Request No. 30 that the phrase "true, accurate and supported" is not ambiguous as those terms have their ordinary meanings.

By this letter, KBE is asking that you withdraw your objections in total, or at least make a timely and good faith effort in writing to seek clarification of any specific ambiguity for which clarification is needed so that Manganaro can withdraw its objections and answer all Requests for Admission on or before April 15, 2021. Alternatively, please let me know when you are available to meet and confer regarding these issues. If necessary, KBE will pursue relief under Rule 37, to include recovery of KBE's legal fees and a Court determination that the Requests be admitted. I look forward to hearing from you.

Sincerely,

Michael Trumble, Esq.