**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**(Charlottesville Division)**

**MANGANARO MIDATLANTIC, LLC,**

*Plaintiff/Counter-Defendant,*

**v.**                                          **Case No. 3:19-cv-00080-GEC**

**KBE BUILDING CORPORATION,** *et al.,*

*Defendant/Counter-Plaintiff*

## MEMORANDUM IN SUPPORT OF THE
## MOTION TO COMPEL PLAINTIFF'S ANSWERS TO
## INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW Defendant KBE Building Corporation ("KBE") by counsel and pursuant to Fed. Rule Civ. P. 37 and states as follows for its Memorandum in Support of its Motion to Compel:

### I.     Factual Background

This matter stems from the construction of a residence hall on the campus of the University of Virginia in Charlottesville (the "Project"). KBE is the General Contractor on the Project and retained Plaintiff as a subcontractor to perform rough carpentry, drywall, exterior façade, suspended ceiling and related work on the Project ("Subcontract Agreement"). The total value of the Subcontract Agreement is approximately $3.2 million dollars.

Plaintiff's Complaint in this matter alleges a breach of contract claim (Count I) against KBE involving disputed claims for an alleged base contract balance of approximately $300,000 and over $1.2 Million (more than 35% of its original contract) in alleged extra and additional work on the Project. Plaintiff's claims consist largely of approximately **300** unsubstantiated and disputed extra work orders. In support of this claim, Plaintiff produced in excess of **900** pages of

1

Change Order and Extra Work Order documentation ("Extra Work Orders"). However, these

Extra Work Orders, while voluminous, lack much of the necessary information to assess

Plaintiff's claimed damages and compliance with the Subcontract Agreement. In relevant part,

the Subcontract Agreement states:

> *To the extent work is performed under this section (Changes and Claims) without advance agreement of the adjustment to the subcontract price, if any, or time, if any, Subcontractor shall track all labor, material and equipment and obtain daily verification by Contractor of these resources utilized solely for the work at issue.* **To the extent such work is, in fact, a change to the scope of Subcontractor's Work under this Agreement, Subcontractor's payment shall be limited to the <u>actual cost incurred</u> for labor, materials and equipment as substantiated by Subcontractor and verified by Contractor or Owner as the case may be, plus the markup set forth in subparagraph (c) below.**

> **Subcontractor shall submit in writing to Contractor all claims for adjustment in the Subcontract price or schedule,** *including an itemization of the damages and time claimed, within five days after the start of the occurrence giving rise to the claim (unless Contractor allows additional time for the submission of data or the Contract Documents provide for a shorter time). No claim for an adjustment in the contract time or price shall be valid if not submitted in accordance with this Article 9 and shall be barred if not so submitted. Subcontractor waives all claims for additional compensation and an extension of time if Subcontractor fails to strictly comply with any terms of this Section 9, and any costs incurred by Subcontractor shall be at the Subcontractor's sole risk and cost.*

> *Adjustments in the Subcontract price resulting from changes, shall be set forth in a Subcontract Change Order.* **Subcontractor shall receive a mark-up of 15% for combined overhead, insurance premiums, permit fees, bond premiums and profit on the direct costs of materials and labor associated with any change, provided such costs are agreed to by Contractor.**

> **Subcontractor acknowledges that Contractor's superintendent or other field personnel shall not be an authorized agent of Contractor to approve Subcontractor's change requests.** *Accordingly, no course of conduct or dealings between the parties, nor express or implied acceptance or alterations or additions to the Work, and no claim that the Owner or Contractor has been unjustly enriched by any alteration or addition to the Work, whether or not there is, in fact, any unjust enrichment to the Work, shall be the basis of any claim for an increase in any amounts due under the Subcontract Documents or for a change in any time period provided for in the Subcontract Documents.*

> **In the event that Owner or Contractor request pricing of changes in the Work, Subcontractor agrees to provide pricing and associated detail, such as substantial breakdowns of labor, material and equipment, within a reasonable period of time, not**

*to exceed five days from Subcontractor's receipt of the request. Failure by Subcontractor to timely provide the information required by this section shall permit Contractor, at Contractor's sole and exclusive discretion, to provide its own reasonable estimate, which estimate shall be binding on Subcontractor. (emphasis added).*

In addition to the quality of the work performed by Plaintiff, assessing Plaintiff's actual costs for additional work performed under the Subcontract Agreement, and its compliance with said agreement as it relates to obtaining approval for the additional work is a focal point of this litigation. KBE has repeatedly asked Plaintiff (in discovery and otherwise) for actual cost verification for these extra work claims and who performed the additional work (Plaintiff or another subcontractor) (*See* Exhibit 1 and 2). To date, Plaintiff has not provided this information as part of its discovery responses. Unfortunately, the documentation Plaintiff has produced in support of its claim do not answer these necessary questions.

On December 1, 2020, KBE issued Interrogatories and Requests for Production of Documents on Plaintiff to address the missing information from the Extra Work Orders (Exhibit 2). Due to a scheduled mediation in February 2021 that only recently concluded without settlement, the parties agreed to extend the deadline for discovery responses.

On April 27, 2021, Plaintiff responded to the Interrogatories and Requests for Production of Documents (Exhibit 2). Plaintiff's responses are deficient as discussed in more detail below. KBE attempted to informally address these deficiencies, but counsel for Plaintiff has not responded (*See* Exhibit 1). The specific requests at issue are addressed in turn below.

## II.     Legal Standard

Fed. R. Civ. P. 26 states that unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

A matter is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *Fed. R. Evid. 401.* When applying the discovery rules, district courts are to give them "a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

Fed. R. Civ. P. 33 states that unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than twenty-five (25) written interrogatories, including all discrete subparts. An interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question for purposes of limits on interrogatories. *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 572-73 (D. Md. 2010). More importantly, by answering some interrogatories and not answering others, the objecting party waives its objection that the requesting party exceeded its number of permitted interrogatories. *Allahverdi v. Regent of University of New Mexico*, 268 F.R.D. 696, 698 (D.N.M. 2005).

### III.    Interrogatories

Interrogatory Number 5 asked Plaintiff to state the factual basis for and identify all communications concerning the allegations in Paragraph 10 of the Complaint that "KBE directed MMA to perform substantial changes and additions to the scope of work as set forth in the Subcontract." Plaintiff objected on the grounds that it is impossible to identify all communications involved in a project of this breadth and duration, especially oral

communications. Plaintiff went on to discuss, but not really identify communications relating to

a single (albeit large) change order and reference Interrogatory Answer Number 7. This answer

is deficient. The Subcontract Agreement required Plaintiff to submit in writing all claims for

adjustment to the Subcontract price or schedule. Accordingly, Plaintiff should have written

requests for all of the additional work Plaintiff now claims it was never compensated for.

Plaintiff could have simply referred to a document production to limit its burden in fully

responding to this request. Further, the answer to Interrogatory Number 7 does not identify the

requested communications. Accordingly, Plaintiff's objection should be stricken and Plaintiff

should be ordered to fully answer this interrogatory.

Interrogatory Number 6 asked Plaintiff for each "substantial change" and "addition to the

scope of work" you identify in response to Interrogatory No. 5, state the factual basis and

resulting damages for, and identify all documents in support of, your contention that it was

outside the scope of your Subcontract. Plaintiff did not assert any objections and simply referred

to the answers to Interrogatories 5 and 7. The answers to Interrogatories 5 & 7 do not answer

this request. Furthermore, this information is necessary as it relates directly to the additional

work Plaintiff allegedly performed and claims it is entitled to compensation. Accordingly,

Plaintiff should be compelled to fully answer this interrogatory.

Interrogatory Number 7 asks Plaintiff to state the factual basis and resulting damages for,

and identify all documents in support of, the allegations in Paragraph 11 of the Complaint that

Manganaro "suffered numerous changes to its planned scope of work; was hindered by

interference by other trades and poor coordination and management by KBE; and was otherwise

hindered and delayed by KBE in the completion of its scope of work for the Project." Plaintiff

answered this interrogatory by referring to the change order documentation it produced. While

this appears reasonable on its face, this answer does not address the most important part of this interrogatory: evidence that these change orders fell outside the scope of the Subcontract and are not the result of Plaintiff's failure to adequately perform its contractual obligations. Accordingly, Plaintiff should be ordered to fully answer this interrogatory.

Interrogatory 12 asked Plaintiff to identify and state the contract, purchase order or other agreement, including change orders and amendments, whether oral or in writing, setting forth compensation arrangements, scope of work, labor rates, . . . and all other terms and conditions pursuant to which Vendor provided, and was to be paid for, the Vendor Scope of Work. Further the interrogatory also asked Plaintiff to describe whether the Vendor's labor was paid by the hour or on a per-unit (or "piecework") basis, the method and manner of tracking workers on site, their hours, and the manner and method of billing for labor and production costs. Plaintiff responded by stating that this information may be determined by examining Plaintiff's documents produced in discovery. This is not true. The documents Plaintiff produced do not show information such as labor rates for Plaintiff's subcontractors, compensation arrangements, the manner of billing, etc., that the vendors provided to Plaintiff and presumably charged Plaintiff. This information is relevant because pursuant to the Subcontract, all additional work provided by Plaintiff was to be done at cost, plus a set markup. In order to determine the appropriate cost of this work, KBE needs to know what these vendors charged Plaintiff. This information is not contained in the documentation Plaintiff produced. Accordingly, Plaintiff should be ordered to fully answer this interrogatory.

Interrogatory Number 14 asked Plaintiff to identify the following information as it relates to each alleged pending change order (including change order 16) and each work ticket that Plaintiff contends comprises the change order: (a) whether any portion of the alleged work was

performed by a subcontractor to Plaintiff; (b) the full name of each person, and each such person's corresponding trade designation and man hours; and (c) the legal employer of each person identified in subpart (a). Plaintiff answered by stating that KBE's superintendent field verified and signed each of Plaintiff's daily work tickets that shows this information. Plaintiff further instructs KBE to see its document production. Plaintiff's document production does not show whether a subcontractor to Plaintiff performed the work. Plaintiff's document production shows change order requests and ticket information that are on Plaintiff's letterhead making it impossible to know who actually performed the work. Accordingly, Plaintiff should be ordered to fully answer this interrogatory.

Interrogatory Number 15 asked Plaintiff identify with respect to each alleged open change order and corresponding ticket referenced in Interrogatory 14 the: (a) KBE person(s) that directed the work be performed; (b) the date that directive; (c) the substance of the directive if verbal; and (d) to identify the communication if in writing. Plaintiff answered by stating that KBE's superintendent field verified and signed each of Plaintiff's daily work tickets that shows this information. Plaintiff further instructs KBE to see its document production. The daily work tickets referenced by Plaintiff do not answer the question of who authorized the work beforehand. The Subcontract Agreement set forth a specific procedure for obtaining approval of change orders. Simply having a daily work ticket signed is insufficient. Accordingly, Plaintiff should be ordered to fully answer this interrogatory.

Plaintiff objected to and did not answer Interrogatories 17-24 on the grounds that the FRCP allows for no more than 25 interrogatories including discrete subparts, and this limit has been exceeded. Plaintiff did not explain why certain interrogatories contain subparts that do not elicit details of a common theme, and therefore, count as a separate interrogatory. Further,

Plaintiff only asserted these objections to some of the interrogatories and not others, thereby waiving the objection. See *Regent of University of New Mexico*, at 698. Accordingly, Plaintiff's objections to these interrogatories should be stricken and Plaintiff ordered to answer them in full.

## IV.    Requests for Production of Documents

Request for Production Number 4 asked Plaintiff to produce all documents communications comprising Manganaro's project file, including communications by and among Manganaro personnel regarding the project. Plaintiff objected on the grounds that it exceeds the scope of permissible discovery. FRCP 26 permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The requested information is relevant and proportional to the needs of the case because this request seeks documents relevant to the scope of Plaintiff's work on this project. Further, Plaintiff's objection makes no reference to the proportional needs of the case and therefore, it is improper. Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

Request for Production Number 8 asked Plaintiff to produce all change orders relating to the Subcontract and/or Project. Plaintiff objected on the grounds that "change order requests that were accepted are reduced to a written change order have merged into the change order itself, are no longer relevant to the disputed issues in this litigation and need not be produced. FRCP 26 permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The requested information is relevant and proportional to the needs of the case because this entire litigation is about what change orders were approved/accepted by KBE, among other things. Further, Plaintiff's

objection makes no reference to the proportional needs of the case and therefore, it is improper. Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

Request for Production Number 13 asked Plaintiff to produce all documents, whether in draft form or not, furnished to any consultant or expert, relating to the Subcontract, Project, or the allegations set forth in the Complaint. Plaintiff objected on the grounds that this request the scope of permissible expert discovery Fed. R. Civ. P. 26 requires the disclosure of all facts or data relied considered by an expert witness in forming his/her opinions. Therefore, Plaintiff's objection should be stricken and Plaintiff should be ordered to fully respond.

Request for Production 14 asked Plaintiff to produce all documents relating to Plaintiff's bid on the project, including all bids or proposals received from others (Plaintiff's subcontractors) for the project. Plaintiff objected on the grounds that "the information requested is not relevant to the claim or defense of any party in this litigation. FRCP 26 permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The requested information is relevant and proportional to the needs of the case because a significant issue in this case is what work was actually performed by Plaintiff (as opposed to a subcontractor) and the cost of said subcontractors. Further, Plaintiff's objection makes no reference to the proportional needs of the case and therefore, it is improper. Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

Request for Production 15 asked Plaintiff to produce all contracts, purchase orders, agreements, change orders, claims, payment demands, and related documents from vendors hired by Plaintiff on the project. Plaintiff objected on the grounds that the request seeks irrelevant information and was overbroad. FRCP 26 permits parties to obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The requested information is relevant and proportional to the needs of the case because a significant issue in this case is what work was actually performed by Plaintiff (as opposed to a subcontractor) and the cost of said subcontractors. Further, Plaintiff's objection makes no reference to the proportional needs of the case and therefore, it is improper. Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

Request for Production 16 asked Plaintiff to produce all photographs, meeting minutes, videos, and other materials in Plaintiff's possession arising out Plaintiff's work or the work of a subcontractor hired by Plaintiff on the project. Plaintiff objected on the grounds that the request is overly broad. FRCP 26 permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The requested information is relevant and proportional to the needs of the case because a significant issue in this case is what work was actually performed by Plaintiff, as opposed to a subcontractor. Further, Plaintiff's objection makes no reference to the proportional needs of the case and therefore, it is improper. Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

Request for Production 18 asked Plaintiff to produce all documents relating to any and all inspections, tests, investigations, analysis, evaluations, or other similar studies concerning the Subcontract or the project. Plaintiff objected on the grounds that it is overly broad and exceeds the scope of permissible expert discovery. FRCP 26 permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. FRCP 26 also permits parties to obtain written reports prepared by expert witnesses and the facts or data considered by the witness in forming his/her

opinions. The requested information is relevant and proportional to the needs of the case because Plaintiff's performance under the Subcontract and the extent of change orders that actually fell outside of Plaintiff's original scope of work are significant issues in this case. The requested documentation potentially shows this information. Further, Plaintiff's objection makes no reference to the proportional needs of the case and therefore, it is improper. Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

Requests for Production 21-24 asks Plaintiff to produce documents relating to expert witnesses and consistent with the FRCP 26(a)(2)(B). Plaintiff objected to each request on the grounds that the requests exceed the scope of permissible discovery, but that it would produce expert related materials consistent with the requirements of FRCP 26(a)(2)(B). These requests are consistent with FRCP 26(a)(2)(B) and Plaintiff's objections do not provide any explanation otherwise. Accordingly, Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

Request for Production 30 asks Plaintiff to produce all records evidencing training of workers used by Plaintiff or its subcontractors on this project. Plaintiff objection on the grounds that this request is not relevant to any of the disputed issues involved in this litigation. Fed. R. Civ. P. 26 permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The requested information is relevant and proportional to the needs of the case because the quality of Plaintiff's work (including subcontractors) is in dispute and has an impact on whether Plaintiff complied with the Subcontract Agreement. Further, Plaintiff's objection makes no reference to the proportional needs of the case and therefore, it is improper. Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

Request for Production 33 asks Plaintiff to produce all accounting and book keeping records in relation to the Project. Plaintiff objected on the grounds that the request is over-broad and exceeds the permissible scope of discovery. FRCP 26 permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The requested information is relevant and proportional to the needs of the case because pursuant to the Subcontract Agreement, for any additional work outside of the original scope, Plaintiff is only entitled to the actual cost of its work plus a set markup. It is necessary to determine Plaintiff's actual costs, particularly as it relates to costs charged by subcontractors. To date, Plaintiff has not produced sufficient documentation to prove its actual costs. Further, Plaintiff's objection makes no reference to the proportional needs of the case and therefore, it is improper. Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

Request for Production 36 asks Plaintiff to produce internal notes, notebooks, communications or other documents relating to the work performed by Plaintiff or its subcontractors in relation to the project. Plaintiff objected on the grounds that it is over-broad and exceeds the scope of permissible discovery. FRCP 26 permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The requested information and relevant and proportional to the needs of the case because the quality of Plaintiff's work on this project, efforts made to correct Plaintiff's errors, and what work was performed by Plaintiff's subcontractors are significant issues in this case. Further, Plaintiff's objection makes no reference to the proportional needs of the case and therefore, it is improper. Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

Request for Production 38 asks Plaintiff to produce Plaintiff's policies and procedures regarding retaining and utilizing Vendors, preparation of work tickets, tracking of work performed by Vendors, tracking of costs for change orders and claims, billing clients, profit enhancement, and preparation of change order requests. Plaintiff objected to this request on the grounds that it is not relevant to any of the disputed issues involved in the litigation. FRCP 26 permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The requested information and relevant and proportional to the needs of the case because pursuant to the Subcontract Agreement, Plaintiff's actual costs dictate the compensation it is entitled to for change orders outside of its original scope. Furthermore, from the outset of this litigation, KBE has asked Plaintiff for sufficient documentation to verify its actual costs, rather than what they eventually charged KBE. To date, Plaintiff has failed to produce sufficient documentation to demonstrate its actual costs. Further, Plaintiff's objection makes no reference to the proportional needs of the case and therefore, it is improper. Plaintiff's objection should be stricken and Plaintiff should be ordered to respond in full.

## V.    Conclusion

Unfortunately, Plaintiff's claims are based on voluminous records that require extensive discovery in this matter. To date, Plaintiff has refused to produce sufficient documentation to verify its actual costs and compliance with the Subcontract Agreement. For the foregoing reasons, KBE respectfully requests this Court enter an order striking Plaintiff's objections and ordering Plaintiff to fully respond to all of the identified Interrogatories and Requests for Production of Documents.

Date: March 9, 2022

Respectfully Submitted,
KIERNAN TREBACH LLP

By: /s/ *R. Michael Trumble*

R. Michael Trumble, Esq. (VSB #91133)
1233 20th Street, NW, 8th Floor
Washington, DC 20036
(202) 712-7000 *telephone*
(202) 712-7100 *facsimile*
mtrumble@kiernantrebach.com
*Counsel for KBE Building Corporation and Federal*
*Insurance Company*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of March, 2022, a true and correct copy of the

foregoing document was served via email and First Class mail, postage prepaid, upon the

following:

Christopher A. Taggi
ASMAR, SCHOR & MCKENNA, PLLC
5335 Wisconsin Avenue, NW, Suite 400
Washington, DC 20015
ctaggi@asm-law.com
*Counsel for Manganaro Midatlantic, LLC*

R. Michael Trumble

## langanaro discovery responses

Chris:

I look forward to the document production.  But, let me attempt to reach some middle ground here. Does the document production show Manganaro's actual costs for additional work/COs (including sufficient proof)?  Does the document production show who (Manganaro or another sub) actually performed the additional work/COs?  Does the document production contain correspondence or other documentation that demonstrates Manganaro complied with the terms of the subcontract agreement as it relates to approval of this additional work?

I ask these questions because based on what has been produced to date and Manganaro's Interrogatory Answers, we don't have that information and it's necessary for this claim. You may contend that some of our discovery requests are overbroad, but that information is discoverable and directly relevant to this claim. If you have it, it should be produced.  Likewise, if you don't have it and/or your client didn't maintain those records, say as such.

If I'm mistaken and you feel this information has been produced, let's talk about it so we can end this back and forth.

Best,

Mike
[Quoted text hidden]

EXHIBIT

1

## langanaro discovery responses

**ichael Trumble** <mtrumble@kiernantrebach.com>
): Christopher Taggi <CTaggi@asm-law.com>

Tue, May 11, 2021 at 9:43 A

Chris:

I look forward to the supplemental production. However, again, does your client intend on producing documentation that answers the questions I raised in my email on April 30th?  If not, I think you should say as such out of good-faith.

Thanks,


Mike
[Quoted text hidden]

## langanaro discovery responses

ichael Trumble <mtrumble@kiernantrebach.com>                    Wed, May 5, 2021 at 4:35 P
): Christopher Taggi <CTaggi@asm-law.com>
:c: "Dunn, Robert" <rdunn@kbebuilding.com>

Chris:


Your document production doesn't contain the information I addressed below.  We've been asking for that information for months.  If you disagree, let's discuss. Also, if you don't have that documentation, say as such. Otherwise, we're going to move forward with the motion to compel.

Thanks,


Mike
[Quoted text hidden]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

MANGANARO MIDATLANTIC, LLC

   Plaintiff

  v.           Case No. 3:19-cv-00080-GEC

KBE BUILDING CORPORATION
and FEDERAL INSURANCE COMPANY

   Defendants.

## <u>MANGANARO'S RESPONSE TO KBE'S INTERROGATORIES</u>

Manganaro Midatlantic, LLC responds to KBE Building Corporation's interrogatories as follows:

### <u>In General</u>

1.  The word usage and sentence structure may be that of the attorney assisting in the preparation of these responses and does not necessarily purport to be the precise language of the responding party.

2.  The information supplied in these responses is not based solely on the knowledge of the responding party, but includes the knowledge of the party's agents, representatives and attorneys, unless privileged.

3.  These responses, as well as the information supplied, produced or identified herein, are based upon information currently available, unless privileged, and the responding party reserves the right to file supplemental responses and/or documents should additional or different information become available through discovery or otherwise.

4.  The information contained these responses is being provided in accordance with the provisions of Rule 26 which requires the disclosure of facts which may be relevant and



proportional to the needs of the case, regardless of whether that information is admissible at trial. Accordingly, by providing the information requested, the responding party does not waive any objections to the admissibility of any evidence on the grounds of materiality, relevancy, or any other proper grounds for objection. For any item or document where a privilege is asserted, the responding party reserves the right to assert any other applicable privilege, via supplement or otherwise, as the facts or the evidence so support.

5.      To the extent that production of deleted or un-deleted electronic documents is sought (including, but not limited to, computer files or data, electronic mail, or other information stored on computer-readable disks or other electronic media), and to the extent that production of such materials involves additional costs (whether relating to search, retrieval, attorneys' fees or otherwise), the responding party reserves the right to interpose additional objections or to apply to the court for an order limiting the scope of such production, requiring that some or all of the associated costs be paid by the requesting party, and/or granting any other appropriate relief.

6.      The responding party will produce documents in its possession, custody, or control; however, the responding party will not produce documents that it received in discovery from other parties in the course of this litigation.  Documents will be produced within 30 days of these written responses, unless otherwise objected to below.

### Responses to Interrogatories

1.      Identify all persons, excluding legal counsel, who participated in the preparation of the answers to these interrogatories, including each person's last known address, telephone number, and relationship to Manganaro.

**RESPONSE**:  Objection.  These responses were prepared in consultation with counsel and asking who at Manganaro participated in this effort is the equivalent of inquiring into the

2

discussions between Manganaro and counsel; these discussions are subject to the attorney client privilege and the work product doctrine. Without waiving this objection, no third parties participated in the preparation of these answers.

2.  Identify all persons who may have discoverable information concerning the Project, the Subcontract, and/or the facts or events underlying this matter and, for each person, please provide the last known address and telephone number, and state generally the facts to which such person is believed to have knowledge thereof.

**RESPONSE**:

The following individuals are Manganaro personnel who may be contacted through counsel:

Brian Loveless, Regional Vice President – has knowledge regarding the contract between KBE and Manganaro, the conduct and progress of the project and the additional cost claims asserted by Manganaro in the litigation.

Kurtis Meyer, Senior Project Manager – has knowledge regarding the contract between KBE and Manganaro, the conduct and progress of the project and the additional cost claims asserted by Manganaro in the litigation.

Henrique Ruvacalva, Field Manager / Superintendent

Gelacio Salome, Foreman

The following individuals are believed to be past or present KBE employees with knowledge of the matters at issue in the litigation:

Greg Brown

Tony Maselli

David Heavener

Godfrey Durham

The following entities are Manganaro subcontractors having knowledge regarding the work they performed for Manganaro on the Project:

Builtech, LLC, 5620 Gatebridge Rd., Richmond VA 23234

M&G Drywall, LLC. 1467 Founders Way, Harrisonburg VA 22802

PLZ Drywall, LLC, 1316 Windmill Cir., Harrisonburg VA 22802

Ruiz RVA Construction, LLC, 5633 Gilling Rd., North Chesterfield VA 23234

Rencon, LLC, 116 Bruton Ct., Chesapeake VA 23322

The following entities are believed to be KBE subcontractors on the project having knowledge regarding the progress and the work of the Project generally, KBE's management of the Project and assessment of backcharges and other costs as between subcontractors.

Atlantic Constructors, Inc.

Moore's Electrical and Mechanical Construction, Inc.

Sullivan Mechanical Contractors, Inc.

Finally, personnel from the University of Virginia are believed to have knowledge regarding the submission and review, approval and/or rejection of claims for additional work or time, KBE's management of the Project, the details and amount of any Owner backcharges for alleged completion or corrective work, and the details of any final settlement with KBE. Specific individuals are presently believed to include Brian Williams, project manager from the Facilities Management Division.

3.     Identify each person whom Manganaro anticipates calling as an expert witness at trial. For each such person, state the subject matter on which the expert will testify, state the general substance of the expert's mental impressions and opinion, and provide a brief summary of the basis for such mental impressions and opinions.

**RESPONSE**: At this time, Manganaro has not identified testifying experts, but will supplement its answer to this interrogatory in accordance with the court's scheduling order.

4.     Identify the amount, factual basis for, and method of calculating all economic damages Manganaro seeks to recover from KBE in this lawsuit, including, but not limited to, those identified in Paragraphs 14 and 15 of the Complaint.

**RESPONSE**: Manganaro's damages in this litigation are calculated as follows:

| | |
|---|---|
| Original Contract | $3,215,921.00 |
| Signed CO's | $76,349.39 |
| Issued CO 16 | $202,431.20 |
| Other Issued CO's | $21,666.55 |
| Adjusted Contract Amt | $3,505,792.00 |
| Paid to Date | $2,987,537.82 |
| Unpaid Contract Balance | **$518,254.18** |
| Total Pending CO's | $1,008,579.00 |
| Total Claim | **$1,526,833.18** |

5.     State the factual basis for and identify all communications concerning the

allegations in Paragraph 10 of the Complaint that "KBE directed MMA to perform substantial changes and additions to the scope of work as set forth in the Subcontract." With respect to each such communication, please provide the date, persons involved, and a general description of the substance of the communication.

**RESPONSE**: Objection: it is impossible to identify literally "all" communications involved in a project of this breadth and duration, especially when communications took place orally on site, via telephone and/or via electronic mail and involved multiple differing personnel from within and without Manganaro's organization. Without waiving this objection, Maanganaro responds that the most significant change to its scope of work involved the Bulletin 82 change to the head-of-wall detail. During the performance of the work, the Project Architect revised the detail governing the joint between the top edge of drywall walls and the bottom surface of the adjacent concrete slab. The purpose of this change was to address a fire rating issue. The change resulted in a different construction detail (increasing the size of the gap between the drywall edge and the surface of the slab) and specifying a different material to fill this joint. At the time that the updated construction details were issued, Manganaro had already installed its work per the original contract specifications using a 1/4 inch gap between the drywall and the slab. After the issuance of revised specifications, a 3/4 inch joint was required. In some location, it was possible to trim back the 1/4 inch joint to meet the new specifications; but in other locations it was necessary to remove 12 inches of drywall and then re-install new drywall to meet the updated specification. Both approaches involved changes to the original scope of Manganaro's work, and additional or re-work in order to meet the increased scope. The total amount of this uncompensated additional work is $304,472 (see change log numbers 39 and 99). While the Bulletin 82 change was certainly the largest such change in scope, there were

other smaller changes as well; these are documented as part of the open, pending change orders that are the subject of this litigation. *See* also answer to interrogatory 7.

6.    For each "substantial change" and "addition to the scope of work" you identify in response to Interrogatory No. 5, state the factual basis and resulting damages for, and identify all documents in support of, your contention that it was outside the scope of your Subcontract.

**RESPONSE**: *See* answers to interrogatories 5 and 7.

7.    State the factual basis and resulting damages for, and identify all documents in support of, the allegations in Paragraph 11 of the Complaint that Manganaro "suffered numerous changes to its planned scope of work; was hindered by interference by other trades and poor coordination and management by KBE; and was otherwise hindered and delayed by KBE in the completion of its scope of work for the Project."

**RESPONSE**:   The following changes and damages comprise the Bulletin 82 claims described in greater detail in the answer to interrogatory 5 above.

| Log # | Description | Date | Amt | Category |
|-------|-------------|------|-----|----------|
| 39 | Bulletin #82 | 04/19/19 | $298,394 | Bulletin #82 |
| 99 | PCO #275 - Laundry Room HOW Detail | 07/29/19 | $6,078 | Bulletin #82 |

The following changes and damages involved damages to Manganaro's work in place which was caused by other KBE subcontractors; the cost of this re-work was to be back-charged to the responsible subcontractor.

| Log # | Description | Date | Amt | Category |
|-------|-------------|------|-----|----------|
| 25 | PCO 200 - Patching | 02/25/19 | $7,580 | PCO 200 |
| 26 | PCO #200 and RFI #448 | 03/15/19 | $6,877 | PCO 200 |
| 31 | PCO #200 - Patching | 04/01/19 | $9,248 | PCO 200 |

| 40 | PCO #200 | 04/12/19 | $8,416 | PCO 200 |
|---|---|---|---|---|
| 43 | PCO 200 | 04/23/19 | $595 | PCO 200 |
| 48 | PCO #200 | 05/09/19 | $8,288 | PCO 200 |
| 57 | PCO 148 | 05/28/19 | $10,565 | PCO 200 |
| 61 | PCO 200 | 05/29/19 | $7,698 | PCO 200 |
| 66 | PCO #200 - Patching | 06/25/19 | $9,151 | PCO 200 |
| 79 | PCO #200 | 06/25/19 | $49,439 | PCO 200 |
| 85 | PCO #200 | 07/02/19 | $32,855 | PCO 200 |
| 89 | PCO 200 KBE Direction on Misc. Activities | 07/18/19 | $73,901 | PCO 200 |
| 103 | PCO #200 | 07/29/19 | $22,246 | PCO 200 |
| 104 | PCO #200 | 07/31/19 | $60,645 | PCO 200 |
| 110 | PCO #200 | 08/15/19 | $3,177 | PCO 200 |
| 112 | PCO #200 | 08/15/19 | $26,733 | PCO 200 |
| 113 | PCO #148 Damage Repair on OT | 08/19/19 | $7,090 | PCO 200 |
| 115 | PCO #200 | 08/19/19 | $31,844 | PCO 200 |
| 116 | PCO #200 | 08/29/19 | $34,189 | PCO 200 |
| 120 | Close Out EWO Tickets | 09/06/19 | $39,206 | PCO 200 |

The following PCO's involved a mix of owner or general-contractor scope changes or damages to Manganaro's work in place caused by other KBE subcontractors. These matters break out as follows.

| Log # | Description | Date | Amt | Category |
|---|---|---|---|---|
| 4 | Bulletin #031 | 12/17/18 | $(1,266) | Other PCOs |
| 20 | PCO 181 | 02/06/19 | $1,308 | Other PCOs |
| 27.1 | Stencil Rated Walls | 04/01/19 | $3,861 | Other PCOs |
| 28 | 1/2" ILO 5/8" GWB at Showers | 04/01/19 | $10,329 | Other PCOs |
| 29 | Cut Drywall for Duct Insulation | 04/01/19 | $4,197 | Other PCOs |
| 32 | PCO #220 - RFI #448 | 04/01/19 | $1,221 | Other PCOs |
| 33 | PCO #236 - South Stair Blocking | 04/01/19 | $1,084 | Other PCOs |
| 34 | PCO #250 - Kitchen Blocking | 04/01/19 | $1,546 | Other PCOs |
| 35 | PCO #251 - Unit #135 Shower | 04/01/19 | $993 | Other PCOs |
| 36 | PCO #252 - Window Damage | 04/01/19 | $3,056 | Other PCOs |
| 37 | PCO #257 - Cut Penetrations | 04/01/19 | $3,666 | Other PCOs |
| 41 | Replace Board at Bathroom Locations | 04/19/19 | $8,671 | Other PCOs |
| 44 | PCO 257 | 04/23/19 | $2,872 | Other PCOs |
| 45 | Cut Penetrations for MEP | 04/23/19 | $1,545 | Other PCOs |
| 46 | Stenciling Extra Work | 05/09/19 | $1,393 | Other PCOs |
| 49 | Bulletin #94 | 05/10/19 | $3,465 | Other PCOs |
| 50 | PCO #289 | 05/09/19 | $5,083 | Other PCOs |

| 51 | PCO #302 | 05/09/19 | $789 | Other PCOs |
|---|---|---|---|---|
| 52 | PCO #303 | 05/09/19 | $773 | Other PCOs |
| 54 | Bulletin 090 | 05/10/19 | $14,766 | Other PCOs |
| 56 | PCO 326 | 05/28/19 | $5,831 | Other PCOs |
| 58 | PCO 289 | 05/29/19 | $8,317 | Other PCOs |
| 59 | PCO 315 | 05/29/19 | $2,922 | Other PCOs |
| 60 | PCO 183 | 05/29/19 | $1,766 | Other PCOs |
| 62 | PCO 220 | 05/29/19 | $2,319 | Other PCOs |
| 63 | Stenciling | 05/29/19 | $2,539 | Other PCOs |
| 70 | Bulletin #93 | 06/25/19 | $4,384 | Other PCOs |
| 71 | KBE Trash Pick Up | 06/25/19 | $3,414 | Other PCOs |
| 72 | Stencils and Center Stairs | 06/25/19 | $9,027 | Other PCOs |
| 73 | PCO #289 - Patching | 06/25/19 | $8,287 | Other PCOs |
| 75 | PCO #353 - ASK #16 | 06/25/19 | $1,748 | Other PCOs |
| 76 | PCO #220 - RFI #448 | 06/25/19 | $14,831 | Other PCOs |
| 80 | Bulletin #101 (part 1) | 06/25/19 | $16,649 | Other PCOs |
| 82 | PCO #349 - Stocking From Boom Lift (pt 1) | 07/05/19 | $14,909 | Other PCOs |
| 83 | PCO #373 - Moving Trash | 07/02/19 | $1,909 | Other PCOs |
| 84 | PCO #323 - Mold at P2 Stair | 07/02/19 | $2,844 | Other PCOs |
| 86 | PCO #338 Added Bulkhead to Cover Pipe | 07/02/19 | $12,435 | Other PCOs |
| 90 | PCO X15 & X17 Wing Walls | 07/18/19 | $4,151 | Other PCOs |
| 92 | PCO 338 - Bulletin 96 | 07/18/19 | $2,891 | Other PCOs |
| 93 | PCO 353 - ASK 16 | 07/18/19 | $7,092 | Other PCOs |
| 94 | PCO 444 - Sheathing at column | 07/18/19 | $2,038 | Other PCOs |
| 95 | PCO 406 - Raised Ceiling Pocket | 07/18/19 | $3,865 | Other PCOs |
| 96 | PCO 397 - ASK 17 Enclosure | 07/18/19 | $3,679 | Other PCOs |
| 98 | PCO #245 - Horizontal Rated Pipe Enclosure | 07/29/19 | $3,600 | Other PCOs |
| 100 | PCO #353 - Durock for Showers | 07/29/19 | $3,580 | Other PCOs |
| 101 | PCO #379 Framing to Cover Slab Edge | 07/29/19 | $6,868 | Other PCOs |
| 105 | PCO #441 Framing For Fire Valve Wall | 07/31/19 | $2,767 | Other PCOs |
| 106 | PCO #512 Shaftwall Field Connection | 07/31/19 | $6,084 | Other PCOs |
| 107 | PCO #440 - RFI #481 Added Control Joints at North Corridor | 07/31/19 | $3,839 | Other PCOs |
| 108 | PCO #353 Added Durock at Showers | 07/31/19 | $5,819 | Other PCOs |
| 111 | PCO #353 Pad Out ADA Showers at #615 | 08/15/19 | $1,937 | Other PCOs |

Additional information requested in this interrogatory may be determined by examining

Manganaro's PCO support files produced in discovery. These files are folderized and labeled corresponding to the PCO log number shown above.

8.     Identify with specificity each and every notice you provided KBE concerning your claim(s), including, without limitation, the date, method of transmission, the person providing the notice, the person(s) receiving the notice, and the subject of the notice.

**RESPONSE**: The information requested in this interrogatory may be determined by examining Manganaro's PCO support files produced in discovery. These files are folderized and labeled corresponding to the PCO log number shown above.

9.     State the factual basis for each of Manganaro's affirmative defenses, which are asserted in your Answer to Counterclaim (Doc. 12).

**RESPONSE**:  See responses to earlier interrogatories above. KBE's damages, if any, were caused by its own mismanagement of the project including without limitation its failure to schedule and sequence the work of the project in a manner that promoted the orderly and logical progression of the work. For example, allegedly damaged items of Manganaro work identified in KBE's back-charges represent properly-installed work that was later damaged by other KBE subcontractors. KBE's back-charges for site cleanup directly stem from its failure to have sufficient onsite facilities for (dumpsters and dumpster removal service, etc) ordinarily foreseeable construction debris generated by all trades on the project.

KBE's breach of contract also included its failure to recognize, sign and fund agreed-upon change orders; these failures constituted a material breach of KBE's obligations under the subcontract sufficient to excuse Manganaro from further performance.

To the extent that certain of Manganaro's changes (such as the Bulletin 82 head-of-wall detail changes described in the interrogatory answers above) constitute "owner changes" to which KBE claims that a conditional payment defense applies, KBE's failure to prosecute these claims against the owner (or the reduction in the amount of these claims in order to offset the owner's own back-charges or other damages caused by KBE or its other subcontractors) operates to excuse any alleged condition precedent to KBE's payment obligations to Manganaro.

KBE's issuance of change orders (such as Change Order 16) based upon amounts negotiated and agreed with Manganaro constitute an accord and satisfaction binding upon KBE. Moreover, its issuance of these changes was done knowing and understanding that Manganaro would act in reliance; as such, KBE has waived the ability to "revoke" or renegotiate these change orders and it is estopped from doing so.

To the extent that various of KBE's stated back-charges against Manganaro pertain to "corrective work" that it never performed or the owner's estimated completion costs that were never provably incurred by the owner and also deducted from KBE (such as, without limitation, the $150,000 in estimated "UVA work assistance costs" or the $80,184 in estimated "drywall and ceiling punch list repair" work), then those charges are not actionable damages and are not recoverable against Manganaro.

10.     State all reasons why Manganaro is not liable to KBE as alleged in KBE's Counterclaim, including the claims against Managaro identified in KBE's responses to Manganaro's discovery requests.

**RESPONSE**: Objection.  It is unclear what "claims" included in KBE's discovery requests are being referenced in this interrogatory; Manganaro also objects to the request to

identify "all" reasons in regard to a myriad of back-charges that in many cases lack documentary support. Without waiving this objection, please see Manganaro's answers to prior interrogatories including without limitation interrogatory 9 above. Also, the information requested in this interrogatory may be determined by examining Manganaro's documents produced in discovery including, without limitation, its written analysis and responses to these back-charges and the final closeout punch list, which was sent to KBE several times in the late summer and fall of 2019. Most of the KBE charges are for drywall supplementation in order to correct damages to Manganaro's work caused by other KBE trades, or by occupant wear and tear; Manganaro is not responsible for reimbursing KBE for the costs of this work. Multiple other charges are for correction of paint; KBE never provided notice to Manganaro of these charges and many are due to damage from other trades. Pursuant to the specifications, applying paint constitutes KBE's acceptance of the drywall substrate; and subsequent drywall damage is not Manganaro's responsibility. In the mailroom ceiling, lights needed to be independently suspended from the slab and not supported by the ceiling grid (which is actually how they were installed); Manganaro is not responsible for these costs. Manganaro reserves the right to supplement its response to this interrogatory as additional information about KBE's back-charges and claims is revealed in discovery.

11. Identify with particularly what Vendors (defined above) Manganaro or its lower-tier Vendors used on this Project.

**RESPONSE**:

Builtech, LLC, 5620 Gatebridge Rd., Richmond VA 23234

M&G Drywall, LLC. 1467 Founders Way, Harrisonburg VA 22802

PLZ Drywall, LLC, 1316 Windmill Cir., Harrisonburg VA 22802

Ruiz RVA Construction, LLC, 5633 Gilling Rd., North Chesterfield VA 23234

Rencon, LLC, 116 Bruton Ct., Chesapeake VA 23322

Commonwealth Building Materials. Multiple locations in Virginia.


12.     For each Vendor referenced in Interrogatory No. 16, provide the following:

12(1). Describe the general scope of work provided to Manganaro or the Project by the

Vendor, including but not limited to, labor, materials, equipment or services (the "Vendor Scope

of Work").

**Response:** Builtech, M&G Drywall, PLZ Drywall, and Ruiz RVA Construction

generally provide drywall and framing labor. Rencon generally perform door and door hardware

installation labor. Commonwealth Building Materials is a material supplier on the project.

12(2). Identify and state the contract, purchase order or other agreement, including

change orders and amendments, whether oral or in writing, setting forth compensation

arrangements, scope of work, schedule requirements, labor rates, unit prices, allowances,

whether labor was billed by the hour or piecework, compliance with the requirements in the

Subcontract and all other terms and conditions pursuant to which the Vendor provided, and was

to be paid for, the Vendor Scope of Work.

**Response:** The information requested in this interrogatory may be determined by

examining Manganaro's documents produced in discovery.

12(3). Describe whether the Vendor's labor was paid by the hour or on a per-unit (or

"piecework") basis, the method and manner of tracking workers on site, their hours, and the

manner and method of billing for labor or production costs, and identify all documents related

thereto.

    **Response:** The information requested in this interrogatory may be determined by examining Manganaro's documents produced in discovery.

    12(4). Describe any and all claims for additional time, compensation or damages made by the Vendor in relation to the Project, describe the resolution and settlement of each claim, and identify all documents related thereto.

    **Response:** None.

    12(5). Identify amounts billed or invoiced by them in relation to the Project.

    **Response:** The information requested in this interrogatory may be determined by examining Manganaro's documents produced in discovery.

    12(6). Identify all payments made by Manganaro to each Vendor, including payments for additional compensation or damages to each Vendor in relation the Project, and identify all documents related thereto.

    **Response:** The information requested in this interrogatory may be determined by examining Manganaro's documents produced in discovery.

    12(7). Identify all lien waivers and releases obtained from each Vendor.

    **Response:** The information requested in this interrogatory may be determined by examining Manganaro's documents produced in discovery.


    13.    Identify all documents and communications provided to the Surety by Manganaro in support of Manganaro's bond claim as alleged in Paragraph 27 of the Complaint.

    **RESPONSE:** Manganaro, through counsel, provided a letter to the surety dated on or about October 15, 2019, which stated the amount of Manganaro's claim and included various

supporting documents. A copy of this letter was included in KBE's document production to Manganaro.

14. With respect to each alleged pending open change order set forth in Exhibit 3 of the Complaint, as well as the Change Order No. 16 regarding overtime that was rescinded by KBE, and each independent work ticket that Manganaro contends is part of each pending change order, provide the following:

a. Indicate whether any portion of the alleged work was performed or provided by a Vendor.

b. The full name of each person, and each such person's corresponding trade designation and manhours, that provided labor or supervision as indicated on each ticket;

c. The legal employer of each person identified in subpart a above, including whether the person is an independent contractor.

**RESPONSE**: KBE's superintendent filed-verified and signed each of Manganaro's daily work tickets, attesting to the fact that the labor and materials described in those tickets (which included the classification and number of laborers, supervision and the number of hours worked) was provided in fact. KBE never insisted upon Manganaro tracking individual workers with the particular tasks performed on a particular day and so Manganaro did not itself record this information. Additional information requested in this interrogatory may be determined by examining Manganaro's PCO support files produced in discovery. These files are folderized and labeled corresponding to the PCO log number shown above.

15. With respect to each alleged pending open change order and corresponding ticket referenced in Interrogatory No. 14, to the extent Manganaro contends the extra work arose out of a direction or instruction from KBE:

a. Identify the KBE person(s) that directed that the Work be performed.

b. Provide the date of the directive.

c. Provide the substance of the directive if verbal.

d. Identify the communication if in writing.

**RESPONSE**: KBE's superintendent filed-verified and signed each of Manganaro's daily work tickets, attesting to the fact that the labor and materials described in those tickets (which included the classification and number of laborers, supervision and the number of hours worked) was provided in fact. Additional information requested in this interrogatory may be determined by examining Manganaro's PCO support files produced in discovery.

16. With respect to each alleged pending open change orders and corresponding ticket referenced in Interrogatory No. 14, describe each fact and contract provision on which Manganaro relies as a basis for its contention that Manganaro is entitled to additional compensation under the Subcontract, including at a minimum:

a. All backup documentation substantiating actual cost incurred by Manganaro for the alleged labor.

**Response**: Information requested in this interrogatory may be determined by examining Manganaro's PCO support files produced in discovery.

b. If and to the extent the work performed was allegedly due to, or caused by, damage to Manganaro's prior work caused by other trades:

1. Describe in detail the alleged damage.

2. Identify the other trade(s) that damaged the work.

3. Provide substantiation that Manganaro's prior work that was allegedly damaged was properly installed and in the proper sequence per the schedule then in effect.

4. Identify the credit for costs avoided by Manganaro had the alleged extra work not been performed or required.

**Response**: Information requested in this interrogatory may be determined by examining Manganaro's PCO support files produced in discovery.

c. Identify photos of the work location and condition prior to performing the work and any alleged corrective or repair work.

**Response**: Information requested in this interrogatory may be determined by examining Manganaro's PCO support files produced in discovery.

d. Identify each completed HECO-SC-1 form for any Manganaro direct costs and HECO-SS-1 form for any costs charged by a Vendor to - and paid by – Manganaro.

**Response**: Information requested in this interrogatory may be determined by examining Manganaro's PCO support files produced in discovery.

e. Provide and Identify all facts substantiating each claim and all required corresponding backup documentation was submitted to KBE within the five (5) day period required by Section 9(b) of the Subcontract.

**Response**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

f. Provide facts substantiating that the need for the work was not caused directly by

Manganaro or persons for whom Manganaro is responsible.

**Response**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

g. Identify all backup documentation substantiating that any foreman or supervision costs were:

1. Provided exclusively for the time noted and not for base contract work;

2. Provided by persons that were not, and should not, already be on site for Subcontractor's base contract Work as required pursuant to Section 9(l) of the Subcontract.

**Response**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

h. Identify all backup documentation substantiating the actual use, quantity and cost for any alleged small tools, fasteners or equipment.

**Response**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

17.    Identify all actual labor overtime costs incurred and paid by Manganaro in relation to the Project, including but not limited to whether the overtime was incurred by a Vendor, the dates incurred, the workers involved, and the reason for the overtime in each case.

**RESPONSE**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

18. With respect to each Vendor, identify all means of communication utilized between Manganaro and the respective Vendor with respect to the Project, including but not limited to e-mail, texting, mail and verbal.

**RESPONSE**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

19. Identify the dates, times, labor hours and associated costs incurred for cleanup performed by Manganaro or any Vendor with respect to the work performed under the Subcontract.

**RESPONSE**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

20. Identify any and all requests by Manganaro for an extension of the time to perform its work on the Project.

**RESPONSE**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

21. Identify any and all efforts made by Manganaro to ensure Manganaro and its Vendors complied with the Affidavit and Certification of Worker Eligibility signed by Manganaro as required by the Subcontract.

**RESPONSE**: Objection. FRCP allows for no more than 25 interrogatories including

discrete subpoarts, and this limit has been exceeded.

22. For each punch list and other work deficiency item for which Manganaro was notified by KBE to repair and complete in relation to the Project, provide the following:

1. Describe in detail the investigation(s) performed by Manganaro, and the date(s) thereof.

2. Identify the response(s) given by Manganaro to KBE, and the date(s) thereof.

3. If and to the extent the item was repaired or corrected by Manganaro or a Vendor, identify the date(s) when the item was repaired or corrected.

4. If and to the extent the item was not repaired or corrected by Manganaro or a Vendor, identify the factual and contractual basis on which Manganaro relies for not having done so.

5. Identify any and all communications with Vendors in relation thereto.

**RESPONSE**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

23. With respect to estimated and actual payroll costs to establish Manganaro's initial and subsequent insurance cost credits presented to KBE and/or Aon Risk Services with respect to the Contractor Controlled Insurance Program utilized on the Project:

a. Identify all estimates, including detailed calculations, by Manganaro and Vendors;

b. Identify all credits owed by Manganaro and Vendors, respectively;

c. Identify all corresponding documents; and

d. Identify all internal communications, as well as communications with KBE, Vendors, or Aon Risk Services.

**RESPONSE**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

24.     Identify the change orders and their respect descriptions and values that you allege are approved by KBE as set forth in paragraph 14 of the Complaint.

**RESPONSE**: Objection. FRCP allows for no more than 25 interrogatories including discrete subpoarts, and this limit has been exceeded.

Dated: 4|27|2021                        Respectfully submitted,

Christopher A. Taggi (VA Bar 41953)
Asmar, Schor & McKenna, PLLC
5335 Wisconsin Ave., NW Suite 400
Washington, DC 20015
T: 202-244-4264
F: 202-686-3567
ctaggi@asm-law.com

*Counsel for Manganaro Midatlantic, LLC*

## Certificate of Discovery

I certify that on April 27, 2021, I will serve copies of the foregoing discovery responses to counsel for the parties via e-mail and that I will retain a copy of the original document until the conclusion of this matter.

Respectfully submitted,

Christopher A. Taggi (VA Bar 41953)
Asmar, Schor & McKenna, PLLC
5335 Wisconsin Ave., NW Suite 400
Washington, DC 20015
T: 202-244-4264
F: 202-686-3567
ctaggi@asm-law.com

*Counsel for Manganaro Midatlantic, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

MANGANARO MIDATLANTIC, LLC

Plaintiff

v.                                                          Case No. 3:19-cv-00080-GEC

KBE BUILDING CORPORATION
and FEDERAL INSURANCE COMPANY

Defendants.

**MANGANARO'S RESPONSE TO KBE'S DOCUMENT REQUESTS**

Manganaro Midatlantic, LLC responds to KBE Building Corporation's document

requests as follows:

**In General**

1.      The word usage and sentence structure may be that of the attorney assisting in the

preparation of these responses and does not necessarily purport to be the precise language of the

responding party.

2.      The information supplied in these responses is not based solely on the knowledge

of the responding party, but includes the knowledge of the party's agents, representatives and

attorneys, unless privileged.

3.      These responses, as well as the information supplied, produced or identified

herein, are based upon information currently available, unless privileged, and the responding

party reserves the right to file supplemental responses and/or documents should additional or

different information become available through discovery or otherwise.

4.      The information contained these responses is being provided in accordance with

the provisions of Rule 26 which requires the disclosure of facts which may be relevant and

proportional to the needs of the case, regardless of whether that information is admissible at trial. Accordingly, by providing the information requested, the responding party does not waive any objections to the admissibility of any evidence on the grounds of materiality, relevancy, or any other proper grounds for objection. For any item or document where a privilege is asserted, the responding party reserves the right to assert any other applicable privilege, via supplement or otherwise, as the facts or the evidence so support.

5.      To the extent that production of deleted or un-deleted electronic documents is sought (including, but not limited to, computer files or data, electronic mail, or other information stored on computer-readable disks or other electronic media), and to the extent that production of such materials involves additional costs (whether relating to search, retrieval, attorneys' fees or otherwise), the responding party reserves the right to interpose additional objections or to apply to the court for an order limiting the scope of such production, requiring that some or all of the associated costs be paid by the requesting party, and/or granting any other appropriate relief.

6.      The responding party will produce documents in its possession, custody, or control; however, the responding party will not produce documents that it received in discovery from other parties in the course of this litigation.  Documents will be produced within 30 days of these written responses, unless otherwise objected to below.

## Responses to Document Requests

1: Produce all documents referring to, relating to, contradicting and/or supporting your response to any interrogatory propounded by KBE, including any documents the identification of which is called for by any interrogatory propounded by KBE or relied upon by you in preparation of any response, including any supplemental response(s), to any interrogatory.

**RESPONSE**:  Objection.  Manganaro objected to various of KBE's interrogatories, and

similarly objects to producing documents sought in an objected-to interrogatory. Without waiving this objection, Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

2: Produce all documents you identified or were requested to identify, reviewed, referenced, referred to, relied upon or considered in responding to any interrogatories in this Action.

**RESPONSE**: Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

3: Produce all documents referring to, relating to, contradicting, and/or supporting the allegations and denials set forth in the Complaint (Dkt. 1) and Answer to Counterclaim (Dkt. 12) in this Action, including all documents and things relied upon by you in preparing the Complaint and Answer to Counterclaim, whether involving KBE or Surety.

**RESPONSE**: Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

4: Produce all documents and communications comprising Manganaro's "Project File" or any other "file" similarly designated for the Project, including but not limited to internal communications by and among Manganaro personnel relating in any way to the Project.

**RESPONSE**: Objection. This request seeks information regarding the entire project, without regard to the material issues in dispute in the litigation. As such, it exceeds the scope of permissible discovery.

5: Produce all documents comprising the Subcontract and any amendments or modifications thereto.

**RESPONSE**:  Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

6: Produce all documents and/or communications reflecting or relating to the allegation that KBE directed Manganaro "to perform substantial changes and additions to the scope of work as set forth in the Subcontract," as is alleged in Paragraph 10 of the Complaint.

**RESPONSE**:  Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

7: Produce all documents and/or communications reflecting or relating to the allegations that Manganaro "suffered numerous changes to its planned scope of work; was hindered by interference by other trades and poor coordination and management by KBE; and was otherwise hindered and delayed by KBE in the completion of its scope of work for the Project," as is alleged in Paragraph 11 of the Complaint.

**RESPONSE**:  Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

8: Produce all change order requests relating to the Subcontract and/or Project.

**RESPONSE**:  Objection.  Change order requests that were accepted and reduced to a written change order have merged into the change order itself, are no longer relevant to the

disputed issues in this litigation and need not be produced. Without waiving this objection, Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, pertaining to open / disputed change order requests.

9: Produce all documents and/or communications reflecting any request or demand Manganaro made to KBE for additional time to perform its work.

**RESPONSE**: Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

10: Produce all documents and/or communications reflecting any request or demand Manganaro made to KBE for compensation, as is alleged in Paragraph 13 of the Complaint.

**RESPONSE**: Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

11: Produce all payment applications, invoices, or other similar requests for payment submitted by Manganaro in connection with the Subcontract and/or Project.

**RESPONSE**: Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

12: Produce all analyses, determinations, documents and materials that review, allocate, assign or otherwise consider or determine the cause of your damages claimed in this Action.

**RESPONSE**: Objection. The request is nonsensical as analyses, determinations and documents are incapable of reviewing, assigning, considering or determining causation.

Furthermore, the request as drafted exceeds the scope of permissible expert discovery.

13: Produce all documents, whether in draft form or not, furnished to any consultant or expert, relating to the Subcontract, Project, or the allegations set forth in the Complaint.

**RESPONSE**: Objection. This request exceeds the scope of permissible expert discovery.

14: Produce all documents, whether in draft form or not, comprising or relating to your bid or the process of preparing your bid for the Subcontract, including but not limited to, all bids or proposals received from others to Manganaro, takeoffs (e.g., Bluebeam), sequencing, estimates, man-hour projections, cost projections, analyses, as-planned schedules, quotations, proposals, and any other documents that would comprise your "bid" or "estimate" file for the Subcontract, the Project or the work referenced in your Complaint.

**RESPONSE**: Objection. The information requested is not relevant to the claim or defense of any party in this litigation.

15: With respect to any and all Vendors (defined above), provide all contracts, purchase orders, agreements, amendments, change orders, claims, payment demands, estimates, bids, accounting records, payroll records, invoices, payments to/from, credits, settlements, assignments, agreements, releases, lien waivers, photos, videos, communications, IRS Form 1099, IRS Form W-9, Form I-9 Employment Eligibility Verification, time sheets/cards, manpower logs, production logs, daily reports, change order requests, and other materials or information received from them, or provided to them, by Manganaro in relation to the Project.

**RESPONSE**: Objection. As drafted, this request seeks multiple categories of information that have no bearing on the claims or defenses asserted by a party in this litigation. Moreover, the request seeks information regarding the entire Project (and thus encompassing issues and matters that are not reasonably in dispute) and is therefore broader than the scope of permissible discovery.

16: Produce copies of all photographs, meeting minutes, videos and other materials in your possession arising out of or relating to your work or the work of Vendors on the Project, the Subcontract or the Project.

**RESPONSE**: Objection. The request seeks information regarding the entire Project (and thus encompassing issues and matters that are not reasonably in dispute) and is therefore broader than the scope of permissible discovery.

17: Produce all documents by and between you and any other party including, but not limited to, KBE, any other bidder, subcontractor, sub-subcontractor, supplier, Vendor, labor-broker, independent contractor, engineer/architect, government agency, including the Department of Labor, or Owner.

**RESPONSE**: Objection. As drafted, this request literally seeks every document by and between Manganaro and any other party without regard to the Project, the litigation or the matters materially in dispute – in other words, every document sent or received by Manganaro at any time, ever. The request is over-broad and exceeds the scope of permissible discovery.

18: Produce all documents relating to any and all inspections, tests, investigations,

analyses, evaluations, or other similar studies, whether undertaken by you or through an outside Vendor, contractor, expert, or consultant, concerning the Subcontract or the Project.

**RESPONSE**:  Objection.  This request seeks information regarding the entire Project (and thus encompassing issues and matters that are not reasonably in dispute) and is therefore broader than the scope of permissible discovery.  Furthermore, the request as drafted exceeds the scope of permissible expert discovery.

19: Produce all documents and materials constituting the exhibits (demonstrative or otherwise) that Manganaro intends to rely on at any hearing or trial in this Action.

**RESPONSE**:  Objection.  This question asks Manganaro to identify and produce documents pertaining to "exhibits... that [it] indends to rely on at any hearing or trial in this Action" which goes directly to Manganaro's (and its counsel's) litigation strategy, which is privileged and protected information within the ambit of (without limitation) the attorney work product doctrine.

20: Produce all documents that Manganaro provided to any person who is expected to or who will testify in this Action.

**RESPONSE**:  Objection.  This request implicates documents protected by the attorney-client privilege (e.g., strategy memos and litigation analyses prepared by counsel and provided to a member of Manganaro's control group who may testify in the litigation), and documents that are protected by the work product doctrine.  To the extent that the "person... expected to testify" is a retained expert, then the request also exceeds the scope of permissible expert discovery under FRCP 26.

21: Produce all documents that were reviewed, prepared, or relied upon by any expert witness who may be called to testify at any hearing or trial in this Action.

**RESPONSE**: Objection. This request exceeds the scope of permissible expert discovery described in FRCP 26. Without waiving this objection, Manganaro will produce expert-related materials consistent with the requirements of FRCP 26(a)(2)(B).

22: Produce all documents that Manganaro provided to any expert witness expected to testify at any hearing or trial in this Action.

**RESPONSE**: Objection. This request exceeds the scope of permissible expert discovery described in FRCP 26. Without waiving this objection, Manganaro will produce expert-related materials consistent with the requirements of FRCP 26(a)(2)(B).

23: Produce all analyses, reports, conclusions, or other form of written materials, whether in draft or final, prepared by or reflecting the final conclusions of any expert witness who may be called to testify at any hearing or trial in this Action.

**RESPONSE**: Objection. This request exceeds the scope of permissible expert discovery described in FRCP 26. Without waiving this objection, Manganaro will produce expert-related materials consistent with the requirements of FRCP 26(a)(2)(B).

24: Produce all resumes and qualifications of any expert who will testify at trial in this Action.

**RESPONSE**: Objection. This request exceeds the scope of permissible expert discovery

described in FRCP 26.  Without waiving this objection, Manganaro will produce expert-related materials consistent with the requirements of FRCP 26(a)(2)(B).

25: Records of all employment benefits, including but not limited to health insurance, vacation, and/or sick time, provided to employees of Manganaro or to Vendors.

**RESPONSE**:  Objection.  As drafted, this request literally seeks every record of employment benefits ever provided to the employees of Manganaro or its vendors without regard to the Project, the litigation or the matters materially in dispute.  Besides being over-broad and exceeding the scope of permissible discovery, it also seeks private and confidential employment data pertaining to individual non-party employees.

26: All records of payments, including overtime payments, to employees of Manganaro who performed labor on the Project.

**RESPONSE**:  Objection.  This request seeks complete salary information for any Manganaro employee who ever worked on the Project, but is not limited in time or in scope to encompass only money earned while working on the Project (to the extent that information is segregable from information about money earned while working on another Project).  As such, the request is over-broad and exceeds the scope of permissible discovery, and it also seeks confidential employment data pertaining to individual non-party employees.

27: All documents and communications exchanged between Manganaro and the Virginia Employment Commission in relation to the Project.

**RESPONSE**:  Objection.  This request is not relevant to any of the disputed issues

involved in the litigation.

28: All IRS Forms 1099 issued to workers used by Manganaro on the Project.

**RESPONSE**:  Objection.  This request seeks complete salary information for any worker who ever worked on the Project, but is not limited in time or in scope to encompass only money earned while working on the Project (to the extent that information is segregable from information about money earned while working on another Project).  As such, the request is over-broad and exceeds the scope of permissible discovery, and it also seeks confidential employment data pertaining to individual non-party employees.

29: All IRS W-4 Forms and I-9 Forms for all employees of Manganaro that worked on the Project.

**RESPONSE**:  Objection.  This request seeks complete salary information for any Manganaro employee who ever worked on the Project, but is not limited in time or in scope to encompass only money earned while working on the Project (to the extent that information is segregable from information about money earned while working on another Project).  As such, the request is over-broad and exceeds the scope of permissible discovery, and it also seeks confidential employment data pertaining to individual non-party employees.

30: All records evidencing training of workers used by Manganaro or Vendors in relation to the Project.

**RESPONSE**:  Objection.  This request is not relevant to any of the disputed issues involved in the litigation.

31: Any and all communications with University of Virginia or its personnel in relation to the Project.

**RESPONSE**: Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

32: All plans and specifications utilized by Manganaro and Vendors with respect work it performed on the Project.

**RESPONSE**: Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

33: All accounting and book keeping records in relation to the Project.

**RESPONSE**: Objection. This request is for all bookkeeping or other financial records pertaining to the entire Project, without regard to the issues in dispute in the litigation. As such, the request is over-broad and exceeds the scope of permissible discovery.

34: All documents used to track work performed by Manganaro or Vendors on the Project.

**RESPONSE**: Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.

35: Any and all lien waivers, releases or settlement agreements signed by Manganaro or Vendors in relation to the Project.

**RESPONSE**:  Manganaro will produce those non-privileged documents in its possession, custody, or control that are responsive to this request, if any.


36: Internal notes, personal notebooks, communications (including e- mail and texting) or other documents referring or relating to work performed by Managaro or Vendors in relation to the Project.

**RESPONSE**:  Objection.  This request is essentially for all notes and communications pertaining to Manganaro's work on the entire Project, without regard to the issues in dispute in the litigation.  As such, the request is over-broad and exceeds the scope of permissible discovery.


37: Written policies and procedures of Manganaro regarding trade skills training, supervision and quality control applicable to the type of work under the Subcontract.

**RESPONSE**:  Objection.  This request is not relevant to any of the disputed issues involved in the litigation.


38: Written policies and procedures of Manganaro regarding retaining and utilizing Vendors, preparation of work tickets, tracking of work performed by Vendors, tracking of costs for change orders and claims, billing clients, profit enhancement, and preparation of change order requests.

**RESPONSE**:  Objection.  This request is not relevant to any of the disputed issues involved in the litigation.

Dated: 4/22/2022

Respectfully submitted,

Christopher A. Taggi (VA Bar 41953)
Asmar, Schor & McKenna, PLLC
5335 Wisconsin Ave., NW Suite 400
Washington, DC 20015
T: 202-244-4264
F: 202-686-3567
ctaggi@asm-law.com

*Counsel for Manganaro Midatlantic, LLC*

## Certificate of Discovery

I certify that on April 22, 2021, I will serve copies of the foregoing discovery responses to counsel via e-mail and that I will retain a copy of the original document until the conclusion of this matter.

Respectfully submitted,

Christopher A. Taggi (VA Bar 41953)
Asmar, Schor & McKenna, PLLC
5335 Wisconsin Ave., NW Suite 400
Washington, DC 20015
T: 202-244-4264
F: 202-686-3567
ctaggi@asm-law.com

*Counsel for Manganaro Midatlantic, LLC*